Justice Breyer
delivered the opinion of the Court.
A federal criminal statute forbidding “Aggravated identity theft” imposes a mandatory consecutive 2-year prison term upon individuals convicted of certain other crimes if, during (or in relation to) the commission of those other crimes, the offender “knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.” 18 U. S. C. § 1028A(a)(l) (emphasis added). The question is whether the statute requires the Government to show that the defendant knew that the “means of identification” he or she unlawfully transferred, possessed, or used, in fact, belonged to “another person.” We conclude that it does.
*648 I
A
The statutory provision in question references a set of predicate crimes, including, for example, theft of government property, fraud, or engaging in various unlawful activities related to passports, visas, and immigration. §1028A(c). It then provides that if any person who commits any of those other crimes (in doing so) “knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person,” the judge must add two years’ imprisonment to the offender’s underlying sentence. § 1028A(a)(l). All parties agree that the provision applies only where the offender knows that he is transferring, possessing, or using something. And the Government reluctantly concedes that the offender likely must know that he is transferring, possessing, or using that something without lawful authority. But they do not agree whether the provision requires that a defendant also know that the something he has unlawfully transferred is, for example, a real ID belonging to another person rather than, say, a fake ID (1 e., a group of numbers that does not correspond to any real Social Security number).
Petitioner Ignacio Flores-Figueroa argues that the statute requires that the Government prove that he knew that the “means of identification” belonged to someone else, i. e., was “a means of identification of another person.” The Government argues that the statute does not impose this particular knowledge requirement. The Government concedes that the statute uses the word “knowingly,” but that word, the Government claims, does not modify the statute’s last phrase (“a means of identification of another person”) or, at the least, it does not modify the last three words of that phrase (“of another person”).
B
The facts of this case illustrate the legal problem. Ignacio Flores-Figueroa is a citizen of Mexico. In 2000, to secure *649 employment, Flores gave his employer a false name, birth date, and Social Security number, along with a counterfeit alien registration card. The Social Security number and the number on the alien registration card were not those of a real person. In 2006, Flores presented his employer with new counterfeit Social Security and alien registration cards; these cards (unlike Flores’ old alien registration card) used his real name. But this time the numbers on both cards were in fact numbers assigned to other people.
Flores’ employer reported his request to U. S. Immigration and Customs Enforcement. Customs discovered that the numbers on Flores’ new documents belonged to other people. The United States then charged Flores with two predicate crimes, namely, entering the United States without inspection, 8 U. S. C. § 1325(a), and misusing immigration documents, 18 U. S. C. § 1546(a). And it charged him with aggravated identity theft, 18 U. S. C. § 1028A(a)(l), the crime at issue here.
Flores moved for a judgment of acquittal on the “aggravated identity theft” counts. He claimed that the Government could not prove that he knew that the numbers on the counterfeit documents were numbers assigned to other people. The Government replied that it need not prove that knowledge, and the District Court accepted the Government’s argument. After a bench trial, the court found Flores guilty of the predicate crimes and aggravated identity theft. The Court of Appeals upheld the District Court’s determination. 274 Fed. Appx. 501 (CA8 2008) (per curiam). And we granted certiorari to consider the “knowledge” issue — a matter about which the Circuits have disagreed. Compare United States v. Godin, 534 F. 3d 51 (CA1 2008) (knowledge requirement applies to “of another person”); United States v. Miranda-Lopez, 532 F. 3d 1034 (CA9 2008) (same); United States v. Villanueva-Sotelo, 515 F. 3d 1234 (CADC 2008) (same), with United States v. Mendoza-Gonzalez, 520 F. 3d 912 (CA8 2008) (knowledge requirement *650 does not apply to “of another person”); United States v. Hurtado, 508 F. 3d 603 (CA11 2007) (per curiam) (same); United States v. Montejo, 442 F. 3d 213 (CA4 2006) (same).
II
There are strong textual reasons for rejecting the Government’s position. As a matter of ordinary English grammar, it seems natural to read the statute’s word “knowingly” as applying to all the subsequently listed elements of the crime. The Government cannot easily claim that the word “knowingly” applies only to the statute’s first four words, or even its first seven. It makes little sense to read the provision’s language as heavily penalizing a person who “transfers, possesses, or uses, without lawful authority” a something, but does not know, at the very least, that the “something” (perhaps inside a box) is a “means of identification.” Would we apply a statute that makes it unlawful “knowingly to possess drugs” to a person who steals a passenger’s bag without knowing that the bag has drugs inside?
The Government claims more forcefully that the word “knowingly” applies to all but the statute’s last three words, i. e., “of another person.” The statute, the Government says, does not require a prosecutor to show that the defendant knows that the means of identification the defendant has unlawfully used in fact belongs to another person. But how are we to square this reading with the statute’s language?
In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence. Thus, if a bank official says, “Smith knowingly transferred the funds to his brother’s account,” we would normally understand the bank official’s statement as telling us that Smith knew the account was his brother’s. Nor would it matter if the bank official said “Smith knowingly transferred the funds to the account *651 of his brother.” In either instance, if the bank official later told us that Smith did not know the account belonged to Smith’s brother, we should be surprised.
Of course, a statement that does not use the word “knowingly” may be unclear about just what Smith knows. Suppose Smith mails his bank draft to Tegucigalpa, which (perhaps unbeknownst to Smith) is the capital of Honduras. If the bank official says, “Smith sent a bank draft to the capital of Honduras,” he has expressed next to nothing about Smith’s knowledge of that geographic identity. But if the official were to say, “Smith knowingly sent a bank draft to the capital of Honduras,” then the official has suggested that Smith knows his geography.
Similar examples abound. If a child knowingly takes a toy that belongs to his sibling, we assume that the child not only knows that he is taking something, but that he also knows that what he is taking is a toy and that the toy belongs to his sibling. If we say that someone knowingly ate a sandwich with cheese, we normally assume that the person knew both that he was eating a sandwich and that it contained cheese. Or consider the Government’s own example, “‘John knowingly discarded the homework of his sister.’” Brief for United States 9. The Government rightly points out that this sentence “does not necessarily” imply that John knew whom the homework belonged to. Ibid, (emphasis added). But that is what the sentence, as ordinarily used, does imply.
At the same time, dissimilar examples are not easy to find. The Government says that “knowingly” modifies only the verbs in the statute, while remaining indifferent to the subject’s knowledge of at least part of the transitive verb’s object. In certain contexts, a listener might understand the word “knowingly” to be used in that way. But the Government has not provided us with a single example of a sentence that, when used in typical fashion, would lead the hearer to believe that the word “knowingly” modifies only a transitive *652 verb without the full object, i. e., that it leaves the hearer gravely uncertain about the subject’s state of mind in respect to the full object of the transitive verb in the sentence. The likely reason is that such sentences typically involve special contexts or themselves provide a more detailed explanation of background circumstances that call for such a reading. As Justice Alito notes, the inquiry into a sentence’s meaning is a contextual one. See post, at 661 (opinion concurring in part and concurring in judgment). No special context is present here. See infra, at 654-657.
The manner in which the courts ordinarily interpret criminal statutes is fully consistent with this ordinary English usage. That is to say courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word “knowingly” as applying that word to each element. United States v. X-Citement Video, Inc., 513 U. S. 64, 79 (1994) (Stevens, J., concurring). For example, in Liparota v. United States, 471 U. S. 419 (1985), this Court interpreted a federal food stamp statute that said, “ ‘[wjhoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [law]’ ” is subject to imprisonment. Id., at 420, n. 1. The question was whether the word “knowingly” applied to the phrase “in any manner not authorized by [law].” Id., at 423. The Court held that it did, id., at 433, despite the legal cliche “ignorance of the law is no excuse.”
More recently, we had to interpret a statute that penalizes “[a]ny person who — (1) knowingly transports or ships [using any means or facility of] interstate or foreign commerce by any means including by computer or mails, any visual depiction, if — (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct,” 18 U. S. C. § 2252(a)(1)(A). X-Citement Video, supra. In issue was whether the term “knowingly” in paragraph (1) modified the phrase “the use of a minor” in subparagraph (A). Id., at 69. The language in issue in X-Citement Video (like the *653 language in Liparota) was more ambiguous than the language here not only because the phrase “the use of a minor” was not the direct object of the verbs modified by “knowingly,” but also because it appeared in a different subsection. 513 U. S., at 68-69. Moreover, the fact that many sex crimes involving minors do not ordinarily require that a perpetrator know that his victim is a minor supported the Government’s position. Nonetheless, we again found that the intent element applied to “the use of a minor.” Id., at 72, and n. 2. Again the Government, while pointing to what it believes are special features of each of these cases, provides us with no convincing counterexample, although there may be such statutory instances.
The Government correctly points out that in these cases more was at issue than proper use of the English language. But if more is at issue here, what is it? The Government makes a further textual argument, a complex argument based upon a related provision of the statute. That provision applies “Aggravated identity theft” where the predicate crime is terrorism. See § 1028A(a)(2). The provision uses the same language as the provision before us up to the end, where it adds the words “or a false identification document.” Thus, it penalizes anyone who “knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person or a false identification document.” Ibid.
The Government’s argument has four steps. Step One: We should not interpret a statute in a manner that makes some of its language superfluous. See, e. g., TRW Inc. v. Andrews, 534 U. S. 19, 31 (2001). Step Two: A person who knows that he is transferring, possessing, or using a “ ‘means of identification’” “‘without lawful authority,’” must know that the document either (1) belongs “ ‘to another person’ ” or (2) is a “ ‘false identification document’ ” because “ ‘there are no other choices.’ ” Brief for United States 14 (emphasis added). Step Three: Requiring the offender to know that *654 the “means of identification” belongs to another person would consequently be superfluous in this terrorism provision. Step Four: We should not interpret the same phrase (“of another person”) in the two related sections differently.
If we understand the argument correctly, it seems to suffer two serious flaws. If the two listed circumstances (where the ID belongs to another person; where the ID is false) are the only two circumstances possibly present when a defendant (in this particular context) unlawfully uses a “means of identification,” then why list them at all? Why not just stop after criminalizing the knowing unlawful use of a “means of identification”? (Why specify that Congress does not mean the statute to cover, say, the use of dog tags?) The fact is, however, that the Government’s reasoning at Step Two is faulty. The two listed circumstances are not the only two circumstances possibly present when a defendant unlawfully uses a “means of identification.” One could, for example, verbally provide a seller or an employer with a made-up Social Security number, not an “identification document,” and the number verbally transmitted to the seller or employer might, or might not, turn out to belong to another person. The word “knowingly” applied to the “other person” requirement (even in a statute that similarly penalizes use of a “false identification document”) would not be surplus.
The Government also considers the statute’s purpose to be a circumstance showing that the linguistic context here is special. It describes that purpose as “providing] enhanced protection for individuals whose identifying information is used to facilitate the commission of crimes.” Id., at 5. And it points out that without the knowledge requirement, potential offenders will take great care to avoid wrongly using IDs that belong to others, thereby enhancing the protection that the statute offers.
The question, however, is whether Congress intended to achieve this enhanced protection by permitting conviction *655 of those who do not know the ID they unlawfully use refers to a real person, i. e., those who do not intend to cause this further harm. And, in respect to this latter point, the statute’s history (outside of the statute’s language) is inconclusive.
On the one hand, some statements in the legislative history offer the Government a degree of support. The relevant House Report refers, for example, both to “identity theft” (use of an ID belonging to someone else) and to “identity fraud” (use of a false ID), often without distinguishing between the two. See, e. g., H. R. Rep. No. 108-528, p. 25 (2004) (statement of Rep. Coble). And, in equating fraud and theft, Congress might have meant the statute to cover both — at least where the fraud takes the form of using an ID that (without the offender’s knowledge) belongs to someone else.
On the other hand, Congress separated the fraud crime from the theft crime in the statute itself. The title of one provision (not here at issue) is “Fraud and related activity in connection with identification documents, authentication features, and information.” 18 U. S. C. § 1028. The title of another provision (the provision here at issue) uses the words “identity theft.” §1028A (emphasis added). Moreover, the examples of theft that Congress gives in the legislative history all involve instances where the offender would know that what he has taken identifies a different real person. H. R. Rep. No. 108-528, at 4-5 (identifying as examples of “identity theft” “ ‘dumpster diving,’ ” “accessing information that was originally collected for an authorized purpose,” “hack[ingj into computers,” and “steal[ing] paperwork likely to contain personal information”).
Finally, and perhaps of greatest practical importance, there is the difficulty in many circumstances of proving beyond a reasonable doubt that a defendant has the necessary knowledge. Take an instance in which an alien who unlawfully entered the United States gives an employer identifi *656 cation documents that in fact belong to others. How is the Government to prove that the defendant knew that this was so? The Government may be able to show that such a defendant knew the papers were not his. But perhaps the defendant did not care whether the papers (1) were real papers belonging to another person or (2) were simply counterfeit papers. The difficulties of proof along with the defendant’s necessary guilt of a predicate crime and the defendant’s necessary knowledge that he has acted “without lawful authority,” make it reasonable, in the Government’s view, to read the statute’s language as dispensing with the knowledge requirement.
We do not find this argument sufficient, however, to turn the tide in the Government’s favor. For one thing, in the classic case of identity theft, intent is generally not difficult to prove. For example, where a defendant has used another person’s identification information to get access to that person’s bank account, the Government can prove knowledge with little difficulty. The same is true when the defendant has gone through someone else’s trash to find discarded credit card and bank statements, or pretends to be from the victim’s bank and requests personal identifying information. Indeed, the examples of identity theft in the legislative history (dumpster diving, computer hacking, and the like) are all examples of the types of classic identity theft where intent should be relatively easy to prove, and there will be no practical enforcement problem. For another thing, to the extent that Congress may have been concerned about criminalizing the conduct of a broader class of individuals, the concerns about practical enforceability are insufficient to outweigh the clarity of the text. Similar interpretations that we have given other similarly phrased statutes also created practical enforcement problems. See, e. g., X-Citement Video, 513 U. S. 64; Liparota, 471 U. S. 419. But had Congress placed conclusive weight upon practical enforcement, the statute would likely not read the way it now reads. In *657 stead, Congress used the word “knowingly” followed by a list of offense elements. And we cannot find indications in statements of its purpose or in the practical problems of enforcement sufficient to overcome the ordinary meaning, in English or through ordinary interpretive practice, of the words that it wrote.
We conclude that §1028A(a)(l) requires the Government to show that the defendant knew that the means of identification at issue belonged to another person. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Justice Scalia, with whom Justice Thomas joins, concurring in part and concurring in the judgment.
I agree with the Court that to convict petitioner for “knowingly transferring], possessing], or us[ing], without lawful authority, a means of identification of another person,” 18 U. S. C. § 1028A(a)(l), the Government must prove that he “knew that the ‘means of identification’ he . . . unlawfully transferred, possessed, or used, in fact, belonged to ‘another person.’” Ante, at 647. “Knowingly” is not limited to the statute’s verbs, ante, at 650. Even the Government must concede that. See United States v. Villanueva-Sotelo, 515 F. 3d 1234, 1237 (CADC 2008) (“According to the government, this text is unambiguous: the statute’s knowledge requirement extends only so far as ‘means of identification’ ”). But once it is understood to modify the object of those verbs, there is no reason to believe it does not extend to the phrase which limits that object (“of another person”). Ordinary English usage supports this reading, as the Court’s numerous sample sentences amply demonstrate. See ante, at 650-651.
But the Court is not content to stop at the statute’s text, and I do not join that further portion of the Court’s opinion. First, the Court relies in part on the principle that “courts *658 ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word ‘knowingly’ as applying that word to each element.” Ante, at 652. If that is meant purely as a description of what most cases do, it is perhaps true, and perhaps not. I have not canvassed all the cases and am hence agnostic. If it is meant, however, as a normative description of what courts should ordinarily do when interpreting such statutes — and the reference to Justice Stevens’ concurring opinion in United States v. X-Citement Video, Inc., 513 U. S. 64, 79 (1994), suggests as much — then I surely do not agree. The structure of the text in X-Citement Video plainly separated the “use of a minor” element from the “knowingly” requirement, wherefore I thought (and think) that case was wrongly decided. See id., at 80-81 (Scalia, J., dissenting). It is one thing to infer the common-law tradition of a mens rea requirement where Congress has not addressed the mental element of a crime. See Staples v. United States, 511 U. S. 600, 605 (1994); United States v. United States Gypsum Co., 438 U. S. 422, 437-438 (1978). It is something else to expand a mens rea requirement that the statutory text has carefully limited.
I likewise cannot join the Court’s discussion of the (as usual, inconclusive) legislative history. Ante, at 655. Relying on the statement of a single Member of Congress or an unvoted-upon (and for all we know unread) Committee Report to expand a statute beyond the limits its text suggests is always a dubious enterprise. And consulting those incunabula with an eye to making criminal what the text would otherwise permit is even more suspect. See United States v. R. L. C., 503 U. S. 291, 307-309 (1992) (Scalia, J., concurring in part and concurring in judgment). Indeed, it is not unlike the practice of Caligula, who reportedly “wrote his laws in a very small character, and hung them up upon high pillars, the more effectually to ensnare the people,” 1 W. Blackstone, Commentaries on the Laws of England 46 (1765).
*659 The statute’s text is clear, and I would reverse the judgment of the Court of Appeals on that ground alone.