NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 22, 2009
Decided December 22, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-1850

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 08 CR 351-1 |
| RAFAEL PEREZ-RODRIGUEZ, | |
| *Defendant-Appellant*. | Robert M. Dow, Jr., |
| | *Judge*. |

## O R D E R

When he entered the United States unlawfully two decades ago, Mexican citizen Rafael Perez-Rodriguez bought a Social Security number and other personal identifiers stolen from Arthur Guajardo, whose name the defendant has used ever since. Federal authorities finally caught up with him in 2008 and charged him with wire fraud, 18 U.S.C. § 1343; use of a passport obtained with a falsified application, *id*. § 1542; aggravated identity theft, *id*. § 1028A(a)(1); and fraudulent possession of five or more identification documents, *id*. § 1028(a)(3). A jury found the defendant guilty on all counts, and the district court sentenced him to a total of 57 months' imprisonment. Perez-Rodriguez appeals, but his appointed lawyer has concluded that the appeal is frivolous and moves to withdraw. See *Anders v. California*, 386 U.S. 738 (1967). Perez-Rodriguez opposes counsel's motion. See CIR. R. 51(b). Our review is limited to the potential issues identified in counsel's facially

adequate brief and in Perez-Rodriguez's response.  See *United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Arthur Guajardo, an Indiana resident, discovered in 2004 that another man was using his identity.  That same year a detective from Blue Island, Illinois, interviewed the defendant, who—representing himself as Guajardo—acknowledged the real Guajardo's accusation of identity theft but insisted he was using his own (but identical) name, date of birth, and Social Security number.  Then in 2007 federal investigators began examining applications for federal and state identification documents issued in Guajardo's name, including Social Security cards, U.S. passports, and an Illinois driver's license and state I.D.  In 1990 a new Social Security number ending in "4743" had been issued to someone using Guajardo's name but claiming to be a Mexican citizen born one year earlier, but then in 1992 the holder of the "4743" number applied for a replacement card using Guajardo's actual date and place of birth and the names of his parents but an address in Blue Island; that 1992 application resulted in the Social Security number first issued to Guajardo in 1978 when he was 15 years old being reissued to the holder of the "4743" number in Blue Island.  That address in Blue Island was also used on passport applications submitted in 1994 and 2005 in Guajardo's name with his date of birth and Social Security number.

When agents executed a search warrant in May 2008 at the address on file for Guajardo's Illinois driver's license, they found the defendant along with copies of Guajardo's birth certificate, the "4743" Social Security card, the passports issued in 1994 and 2005, an Illinois state I.D., a Michigan state I.D. with Guajardo's true Social Security number, and a student I.D. from Moraine Valley Community College in Illinois.  All of the documents are in the name of Arthur Guajardo, but those with photographs depict Perez-Rodriguez.  Inside the house agents also found a Mexican passport and birth certificate in the defendant's name, as well as a 1997 letter from the IRS addressed to "Arthur Guajardo" in Chicago alerting him that he was using a Social Security number assigned to a different person.  Another letter found during the search, this one from 1994, was written by the defendant using his Guajardo alias and represents to the Child Support Division of the prosecutor's office in Lake County, Indiana, that he was aware that he and another man had "identical names" but he was not the one who owed child support.

The government recounted this investigation at trial.  It also introduced evidence that the defendant had attended Moraine Valley under the name Guajardo between 2001 and 2004.  He helped finance his education with more than $6,000 in federal aid obtained using Guajardo's date of birth and Social Security number.  And the defendant's former girlfriend, Margarita Santamaria, testified that she knew him both as Perez-Rodriguez and Guajardo; she recounted that he presented a U.S. passport in Guajardo's name when the couple landed at O'Hare International Airport in January 2007 after a trip to Mexico.  The

real Arthur Guajardo testified that he never lived in Illinois, never had a driver's license or state I.D. issued in Illinois, never applied for a Social Security card after his first and only application in 1978, never applied for a passport or traveled outside the United States, and never attended college. The defendant did not offer any evidence.

In his *Anders* submission counsel evaluates whether Perez-Rodriguez could challenge the sufficiency of the evidence underlying his convictions. We would uphold the jury's verdict unless no rational trier of fact could have concluded, based on the evidence viewed in the light most favorable to the prosecution, that all of the elements of the charged crimes were proved beyond a reasonable doubt. See *United States v. Khattab*, 536 F.3d 765, 769 (7th Cir. 2008).

The defendant's conviction for wire fraud was based on his use of Guajardo's identity to apply for and receive federal financial aid from the Department of Education; the funds were transferred by interstate wire to accounts held by Moraine Valley. The government's evidence that the defendant lied in financial-aid applications to obtain money through programs for which he was ineligible was more than ample to prove that he devised and executed a scheme to defraud. See 18 U.S.C. § 1343; *United States v. Powell*, 576 F.3d 482, 490-91 (7th Cir. 2009). Likewise, the evidence offered to prove that Perez-Rodriguez used a passport obtained with a false application was ample; a passport in Guajardo's name was issued to the defendant after he lied about his identity in the application, and then in January 2007 he presented that fraudulent passport at O'Hare to reenter the country from Mexico. See 18 U.S.C. § 1542; *United States v. Connors*, 441 F.3d 527, 531 (7th Cir. 2006). And as far as the charge that Perez-Rodriguez possessed and intended to use at least five forms of false identification, the documents recovered during the search of his house provided overwhelming evidence. See 18 U.S.C. § 1028(a)(3); *United States v. Campa*, 529 F.3d 980, 1003 (11th Cir. 2008). As counsel says, a sufficiency challenge to any of these convictions would be frivolous.

Counsel also concludes that it would be frivolous to lodge a sufficiency challenge against the defendant's convictions for aggravated identity theft. As relevant here, 18 U.S.C. § 1028A(a)(1) makes it a crime to use or possess without authorization "a means of identification of another person" to commit a felony enumerated in subsection (c) of the statute. See *Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1894 (2009); *United States v. Cox*, 577 F.3d 833, 838 (7th Cir. 2009). Perez-Rodriguez was charged with two counts: the first for using Guajardo's name and date of birth in relation to his § 1542 offense at O'Hare in January 2007, and the second for using and possessing Guajardo's name, date of birth, and Social Security in relation to the § 1028(a)(3) offense committed in May 2008. Names, dates of birth, and Social Security numbers are all means of identification, 18 U.S.C. § 1028(d)(7)(a), and both § 1542 and § 1028(a)(3) are enumerated felonies, see 18 U.S.C.

§ 1028A(c)(4), (c)(7); *United States v. Gomez*, 580 F.3d 1229, 1233 (11th Cir. 2009); *United States v. Guillen-Esquivel*, 534 F.3d 817, 817 (8th Cir. 2008). As counsel notes, the government also had to prove that Perez-Rodriguez knew he was using identifiers belonging to a real person, see *Flores-Figueroa*, 129 S. Ct. at 1888-89, but an argument that he did not would be frivolous. The defendant possessed a copy of Guajardo's birth certificate, he had used the information on that certificate to obtain the Social Security number assigned to Guajardo, he had been told by the IRS that the Social Security number he was using was assigned to someone else, he had told the prosecutor's office in Lake County, Indiana, that he knew about the "other" Arthur Guajardo, and he had fended off the Blue Island police when they investigated the real Guajardo's allegation that the defendant had stolen his identity. The jury was correctly instructed on this knowledge element, and though Perez-Rodriguez asserts in his Rule 51(b) response that he did not know at the outset that Guajardo was a real person, the evidence shows that he certainly knew in 2007 and 2008 when he committed the two violations of § 1028A.

Counsel next discusses whether Perez-Rodriguez could argue that the district court abused its discretion by granting the government's pretrial motion to introduce his 1990 and 1992 applications for social security numbers, his 1994 passport application, his letter concerning the child-support matter, and his statements to the Blue Island detective. Counsel concludes that his potential argument would be frivolous, and we agree. The government proceeded cautiously because it was concerned that this evidence might be viewed as "other crimes" evidence, see FED. R. CRIM. P. 404(b), but the district court correctly recognized that all of the evidence was direct proof of the charged crimes. See *United States v. Edwards*, 581 F.3d 604, 608 (7th Cir. 2008); *United States v. Lane*, 323 F.3d 568, 581 (7th Cir. 2003).

Counsel also considers whether Perez-Rodriguez could challenge his overall prison sentence. In arriving at a total of 57 months, the district court first imposed concurrent terms of 21 months for the violations of § 1343, § 1542, and § 1028(a)(3). The court then imposed mandatory, two-year prison terms on the convictions for aggravated identity theft. S*ee* 18 U.S.C. § 1028A(a)(1). By statute, the district court was required to run the first of those terms consecutively to the prison sentences on the other three counts, *id*. § 1028A(b)(2), but the court retained the discretion to run the second 24-month term partly or wholly concurrently with the first, *id*. § 1028A(b)(2). The court chose to make the terms run together for 12 of the 24 months, for a total of 36 months.

We agree with counsel that any challenge to this sentencing scheme would be frivolous. Twenty-one months is within the guidelines range calculated by the district court for the counts that did not carry mandatory terms, and counsel has not identified any potential error in the court's application of the guidelines. A sentence within the guidelines

range is presumed reasonable, *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007), so in the absence of a strong rebuttal to that presumption, a challenge based on the length of this portion of the sentence would be frivolous.  And in settling on total incarceration of 57 months, the court evaluated all of the arguments in mitigation made by Perez-Rodriguez but concluded that the duration of his criminal conduct, when viewed in relation to the harm it caused Guajardo, foreclosed a more lenient sentence.  Counsel sees nothing unreasonable in that conclusion, nor do we.

Accordingly, we GRANT the motion to withdraw and DISMISS the appeal.