NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1082
_____

UNITED STATES OF AMERICA

v.

FLAVIO DILONE,
a/k/a Flavio Alexande Fernandez

Flavio Dilone,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 11-cr-00452)
District Judge:  Honorable Joel H. Slomsky
_____

Submitted Under Third Circuit LAR 34.1(a)
November 14, 2013

Before:  HARDIMAN, SHWARTZ and SCIRICA, *Circuit Judges*.

(Filed:  November 15, 2013)
_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

Flavio Dilone appeals his judgment of sentence after pleading guilty to three

federal crimes. Counsel for Dilone has moved for permission to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). We will grant counsel's motion and affirm the judgment of the District Court.

I

In November 2009, Dilone, a native of the Dominican Republic who had been deported previously, walked across the border undetected from Mexico to Laredo, Texas. In June 2011, U.S. Immigration and Customs Enforcement (ICE) agents received confidential information that Dilone had illegally reentered the United States and was the ringleader of a heroin organization operating in North Philadelphia.

On July 12, 2011, ICE agents arrested Dilone and seized a significant quantity of heroin. At the time of his arrest, Dilone identified himself as Jorge Emmanuel Rolon-Marquez and provided agents with a Puerto Rican birth certificate, a United States Social Security card, and a Pennsylvania identification card in that name. After waiving his *Miranda* rights, Dilone admitted that he had purchased the Social Security card and the birth certificate, and had used these documents to obtain the Pennsylvania identification card. He also stated that he knew the Social Security card was genuine and belonged to a real person, noting that he would not purchase "fake stuff."

After plea negotiations in which the Government agreed not to file charges against him for heroin distribution, Dilone entered an unconditional guilty plea to three counts: (1) unlawful reentry into the United States, in violation of 8 U.S.C. § 1326; (2) misuse of

a Social Security card, in violation of 42 U.S.C. § 408(a)(7)(B); and (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and (c)(11). At his guilty plea colloquy on August 23, 2012, Dilone stated that he had received a copy of the indictment and understood it, and that his counsel had explained to him his rights and the nature of the charges against him. The prosecutor then read into the record the factual basis of the plea, which included Dilone's post-arrest statement that he knew the Social Security card was a genuine document. When asked whether this information was accurate, Dilone concurred but noted he had not thought "one way or the other whether [the card] was real or not." He admitted, however, that he had no reason to believe the Social Security card was not genuine.

The Probation Office's Presentence Investigation Report (PSR) recommended an advisory range under the United States Sentencing Guidelines (USSG) of 42 to 48 months' imprisonment, based in part on Dilone's criminal history. Dilone had two prior convictions relevant to this appeal. In June 1994, he was charged in New York with two counts of criminal possession of a weapon in violation of New York Penal Law (NYPL) §§ 265.03 and 265.02(4). He was released on bail but failed to appear in court in July 1995. Subsequently, he was charged with one count of bail jumping in violation of NYPL § 215.56. He was convicted of both offenses in January 2000 and sentenced to one to three years' imprisonment for criminal weapons possession and a concurrent one-year term for bail jumping. The PSR assigned Dilone three points for his criminal

3

weapons conviction and two points for his bail jumping conviction. Adopting the PSR's recommendations, the District Court sentenced Dilone to 42 months' imprisonment, a one-year term of supervised release, and $1,300 in fines.

Dilone filed this timely appeal. His counsel then moved to withdraw pursuant to *Anders*. Dilone did not file a pro se brief.

## II

When counsel files a motion pursuant to *Anders*, as counsel for Dilone has done here, we determine whether: (1) counsel has adequately fulfilled the *Anders* requirements; and (2) an independent review of the record presents any non-frivolous issues. *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001).

To meet the first prong, appointed counsel must examine the record, conclude that there are no non-frivolous issues for review, and request permission to withdraw. Counsel must accompany a motion to withdraw with "a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. Dilone's counsel identified two potential grounds for appeal and discussed why they lack merit: (1) Dilone's guilty plea to aggravated identity theft had a factual basis and thus was properly accepted by the District Court; and (2) Dilone's bail jumping conviction under New York state law was properly counted in determining his criminal history category.

We find that counsel's thorough discussion of the reasons as to why no appealable issue exists meets the requirements of *Anders*'s first prong. As we explain below, our

4

independent review of the record confirms counsel's conclusion that there are no meritorious issues for appeal.

## III

The District Court's finding of a factual basis for a plea is reviewed for abuse of discretion. *United States v. Cefaratti*, 221 F.3d 502, 509 (3d Cir. 2000). In sentencing appeals such as this one, "[w]e review the District Court's legal interpretations and applications of the [Sentencing Guidelines] de novo" and its factual findings for clear error. *United States v. Cicirello*, 301 F.3d 135, 137 (3d Cir. 2002).

### A

Dilone claims that the District Court did not have sufficient factual basis to accept his guilty plea to the aggravated identity theft charge. *See Cefaratti*, 221 F.3d at 509 (noting that Fed. R. Crim. P. 11(f) requires "notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment . . . without making such inquiry as shall satisfy it that there is a factual basis for the plea"). The court's inquiry to this end may consider "the defendant's own admissions, the government's proffer of evidence, the presentence report, or 'whatever means is appropriate in a specific case—so long as the factual basis is put on the record.'" *Id.* (citing *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998)). "The court 'need not be convinced beyond a reasonable doubt that an accused is guilty. It need only be convinced that there is sufficient evidence to justify the reaching of such a conclusion.'" *Id.* (citing *United States v. Alber*, 56 F.3d 1106, 1110

(9th Cir. 1995)).

To prove that a defendant has committed aggravated identity theft in violation of 18 U.S.C. § 1028A, the government must demonstrate, *inter alia*, that the defendant "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1). This knowledge element requires the government to show that "the defendant knew that the means of identification at issue belonged to another person." *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009). "In the classic case of identity theft, intent is generally not difficult to prove." *Id.* at 656.

At the time of his arrest and in subsequent interviews, Dilone admitted that he knew the Social Security card and birth certificate belonged to a real person, that he would not purchase "fake stuff," and that he had used the Social Security card to obtain a valid Pennsylvania identification card. Dilone also stated during his plea colloquy that he had no reason to believe that the identification documents were not genuine. Thus, we hold that the record supports the District Court's acceptance of Dilone's guilty plea.

B

Dilone also contends that the District Court, in calculating his criminal history points at sentencing, erred in assessing him two points for his bail jumping conviction under NYPL § 215.56.

Under § 4A1.2 of the Guidelines, a defendant's criminal history calculation

6

includes "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense." USSG § 4A1.2(e)(2). "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." USSG § 4A1.2(a)(1). Two points are added "for each prior sentence of imprisonment of at least sixty days" and "not exceeding one year and one month." USSG § 4A1.1(b) (referencing USSG § 4A1.1(a)). Dilone was sentenced to one year in prison for bail jumping in January 2000. This conviction was within 10 years of his illegal reentry into the United States from Mexico, which occurred in November 2009 per his own admission.

Nevertheless, Dilone maintains that his bail jumping conviction occurred when he was a minor and does not constitute a countable offense under the New York Offender Statute. *See* N.Y. Crim. Proc. Law §§ 720.10–720.35 (providing that a juvenile who commits a criminal offense shall be adjudicated as a "youth offender" and not suffer a conviction). He made this same argument to his counsel prior to sentencing. His counsel, however, obtained documents from the New York Supreme Court that confirmed that in fact Dilone was an adult (19 years old) when he was convicted for bail jumping and that he was not placed in the Youthful Offender Program. Thus, his bail jumping conviction was properly included in the PSR adopted by the District Court.

Dilone also requested counsel to argue that the District Court should have counted his sentences for criminal weapons possession and for bail jumping as a "single sentence"

7

because they were imposed on the same day and ran concurrently. But "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense)." USSG § 4A1.2(a)(2). Because Dilone was arrested for weapons possession before he committed the bail jumping offense, and there was an intervening arrest, the two convictions were correctly counted separately under the Guidelines.

Accordingly, we hold that Dilone's bail jumping conviction was properly counted in determining his criminal history category.

IV

For the reasons stated, we will affirm the judgment of the District Court and, in a separate order, grant counsel's motion to withdraw.