[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-13683
Non-Argument Calendar

————————————————

D.C. Docket No. 1:17-cr-20073-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YULIER BLANCO PEREZ,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(December 27, 2018)

Before WILLIAM PRYOR, GRANT and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, defendant Yulier Blanco Perez appeals his convictions

and 51-month total sentence for conspiracy to commit access device fraud, use of

unauthorized access devices, possession of fifteen or more unauthorized access devices, and aggravated identity theft.  On appeal, Perez argues that the district court plainly erred in accepting his guilty plea and in calculating his advisory guidelines range at sentencing.  After review, we affirm Perez's convictions and dismiss Perez's appeal of his sentence based on the sentence-appeal waiver in his plea agreement.

## I.  BACKGROUND

### A.    Offense Conduct

On five occasions between July 28, 2016 and October 13, 2016, Perez and two co-conspirators used fraudulent driver's licenses and credit cards with account numbers issued to other persons to purchase stone tile, home improvement materials, and other items of value.  During these fraudulent transactions, the conspirators successfully used seven credit card account numbers, and attempted to use another five credit card account numbers that were declined.  In total, the conspirators fraudulently purchased $166,782.76 in materials from the stone tile stores.

The manager at Haifa Limestone alerted law enforcement to some of these fraudulent purchases at their West Palm Beach showroom.  An investigation revealed that Perez had exchanged 18 stolen credit card numbers by cell phone text

messaging with one of his co-conspirators.  Some of these stolen credit card numbers were used in the fraudulent transactions at Haifa Limestone.

## B.    Plea Agreement

In a plea agreement, Perez pled guilty to five counts.  The plea agreement identified the crime and statute for each count, as follows:

> The Defendant agrees to plead guilty to Counts 1, 2, 6, 10, and 11 of the Indictment, which charge the Defendant with conspiracy to commit access device fraud, in violation of Title 18, United States Code, Section 1029(b)(2) (Count 1); use of one or more unauthorized access devices, in violation of Title 18, United States Code, 1029(a)(2) (Count 2); aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1) (Count 6); conspiracy to commit access device fraud, in violation of Title 18, United States Code, Section 1029(b)(2) (Count 10); and possession of fifteen or more unauthorized access devices, in violation of Title 18, United States Code, Section 1029(a)(3) (Count 11).

In exchange, the government agreed to dismiss the two remaining counts of aggravated identity theft against Perez, to recommend a decrease in Perez's offense level for acceptance of responsibility if certain conditions were met, and to move for a downward departure if, in its sole discretion, Perez's cooperation warranted one.  The plea agreement also contained a sentence-appeal waiver.

Both Perez and his attorney signed the plea agreement.  Perez also signed an accompanying factual proffer, which outlined in detail the conduct of Perez and his co-conspirators.

3

## C.    Plea Hearing

Because Perez challenges the adequacy of the Rule 11 colloquy, we review what happened at the change-of-plea hearing.  The district court placed Perez under oath and ensured that he understood that he could be prosecuted for perjury if he gave false statements.[1]  In response to the district court's inquiries, Perez indicated that he was 34 years old, he had obtained his GED, he did not suffer from any mental or emotional illnesses, he had not taken any drugs or alcohol during the preceding 48 hours, and he had never been treated for an addiction.

Perez also acknowledged that he had read and discussed the plea agreement with his attorney before signing it.  The district court reviewed on the record portions of the plea agreement, including the appeal-waiver provision.

Perez acknowledged that he was not being forced or coerced into pleading guilty, that he had not been made any promises or assurances other than those in the plea agreement, and that he was pleading guilty of his own free will because he was in fact guilty of the charged offenses.

 The district court then informed Perez that he was pleading guilty to felony offenses and that he would lose valuable rights as a result of his guilty pleas, including the rights to vote, hold public office, serve on a jury, or possess a

---

[1]An interpreter was present and interpreted the proceedings for Perez.

4

firearm.  The district court also stated that the pleas would result in Perez's

deportation to his native Cuba.  Perez stated that he understood.

Importantly, the district court then recited the extensive factual proffer,

which Perez had signed, almost verbatim.  With regard to Perez's conduct

supporting the first access device fraud conspiracy charged in Count 1, the district

court recited:

> [F]rom July 28, 2016, through October 27, 2016, in Palm Beach, Broward, and Miami-Dade Counties, and elsewhere, you and your codefendants, Silvio Lopez Cuellar and David Machado Frometa, conspired with each other and with other persons and knowingly did, with the intent to defraud, traffic in and use account numbers issued to other persons to purchase stone tile, home improvement materials, and other items of value, and obtained items of value aggregating $1,000 or more during that time period.
> Your conduct affected interstate and foreign commerce.

As to Perez's conduct supporting the underlying use offense charged in Count 2

and the aggravated identity theft charged in Count 6, the district court recited:

> On July 27, 2016, you entered Atlantic Stone in Broward County, identified yourself as Ariel, Jr., selected stone tile for purchase, and advised an Atlantic Stone employee your father would call the store to pay for the order.
> On July 28, 2016, a coconspirator identifying himself [as] Ariel's father, called Atlantic Stone and paid approximately $15,900 for the stone tile that you had selected the day before using a credit card account number ending in 0688, registered to M.A.  On September 28, 2016, you contacted Haifa Limestone in Palm Beach County and purchased $15,582 worth of stone tile by a cellular telephone text messaging from your known cellular telephone number in the name of Ariel Sosa Viamontes, using credit card account numbers ending in 6547 and 1616, registered to V. J. and E. G. respectively.

5

Victims V. J. and E. G. did not authorize you to possess or use their credit card account numbers, and you knew the credit card account numbers issued to V. J. and E. G. belonged to real persons.

On September 29, 2016, you, again, contacted Haifa Limestone, and purchased approximately $27,560 worth of stone tile by cellular telephone text messaging from your known cellular phone number in the name of Ariel Sosa Viamontes, using credit card account number ending in 3867, registered to R. A.  Victim R. A. did not authorize you to possess or use his or her credit card account number, and you knew the credit card account number issued to R. A. belonged to a real person.

As to Perez's conduct supporting the second access device fraud conspiracy

charged in Count 10 and the underlying possession offense charged in Count 11,

the district court recited:

From September 22nd, 2016, through October 27, 2016, in Palm Beach, Broward, and Miami-Dade Counties, you and codefendant, Silvio Lopez Cuellar conspired to and knowingly did, with the intent to defraud, possess 15 or more credit card numbers issued to other persons, that conduct affecting interstate and foreign commerce.

On September 22nd, 2016, Silvio Lopez Cuellar transferred three credit card account numbers ending in 9845, 0111, and 8080, to you by cellular telephone text messaging, and you maintained possession of those numbers in your cellular phone.

On October 20, 2016, Silvio Lopez Cuellar transferred five credit card account numbers ending in 7688, 7796, 0270, 1563, and 3170, to you by cellular phone text messaging, and you maintained possession of those numbers in your cellular phone.

On October 27, 2016, you possessed 19 credit card account numbers in your cellular phone that Silvio Lopez Cuellar had transferred to you by cellular telephone text messaging.  You knew the 19 credit card account numbers you maintained in your possession belonged to real people, and you did not have the authorization of those people to possess the numbers.

6

After the full recital of the factual proffer, Perez agreed that all of the factual proffer was true. Perez's attorney confirmed that he was satisfied that Perez understood his rights and the rights he was waiving, and that the factual basis was sufficient.

Perez then entered guilty pleas to Counts 1, 2, 6, 10, and 11. The district court found that Perez was competent and capable of entering informed pleas, that he was aware of the nature of the charges and consequences of his pleas based on conversations with his attorney and the plea colloquy, that the pleas were knowing and voluntary, and that the factual basis was sufficient to establish the essential elements of the offenses. The district court therefore accepted Perez's pleas and adjudicated him guilty.

### D.    Sentencing

Perez's presentence investigation report ("PSI") grouped Counts 1, 2, 10 and 11 and recommended, inter alia, a two-level increase in Perez's offense level under U.S.S.G. § 2B1.1(b)(11)(B)(i), because the offense conduct involved the production of, or trafficking in, unauthorized or counterfeit access devices. The PSI ultimately calculated a total offense level of 17.

With a criminal history category of III, Perez's advisory guidelines range was 30 to 37 months' imprisonment for Counts 1, 2, 10 and 11, plus a mandatory consecutive 24-month sentence for Count 6. The PSI identified the statutory

maximum sentences of 5 years for Counts 1 and 10 and 10 years for Counts 2 and Count 11.  See 18 U.S.C. § 1029(b)(2),(c)(1)(A)(i).

Perez objected to the PSI's inclusion of the two-level increase under U.S.S.G. § 2B1.1(b)(11)(B)(i), arguing that he personally did not produce or re-encode any of the credit cards used in the conspiracy.  Perez contended that his total offense level should be 15 and his resulting guidelines range should be 24 to 30 months' imprisonment.  The government responded that the re-encoding of the credit cards by Perez's co-conspirators was reasonably foreseeable relevant conduct.

At the July 2017 sentencing hearing, the district court overruled Perez's objection to the § 2B1.1(b)(11)(B)(i) offense-level increase.  The district court found that Perez's total offense level was 17 and that, with a criminal history category of III, his advisory guidelines range for Counts 1, 2, 10 and 11 was 30 to 37 months.

Following argument and allocution, the district court considered the 18 U.S.C. § 3553(a) factors and sentenced Perez to 37 months on Counts 1, 2, 10 and 11, to be served concurrently, and to a 24-month consecutive sentence on Count 6. Perez reiterated his objection to the two-level guidelines enhancement.  At no point before or during the sentencing hearing did Perez give any indication he wished to withdraw his guilty plea.

## II.  GUILTY PLEA

### A.    Plain Error Review

On appeal, Perez contends that the district court accepted his guilty plea without complying with Rule 11 of the Federal Rules of Criminal Procedure. Because Perez failed to raise this Rule 11 argument in the district court, we review it for plain error.  See United States v. Moriarty, 429 F.3d 1012, 1018-19 (11th Cir. 2005).

To establish plain error, a defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights.  Id. at 1019.  If the defendant satisfies these three conditions, we may exercise our discretion to recognize the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.  To establish that an unpreserved Rule 11 error affected his substantial rights, the defendant must show "'a reasonable probability that, but for the error, he would not have entered the plea.'"  United States v. Brown, 586 F.3d 1342, 1345 (11th Cir. 2009) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004)); see also United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005) (explaining that the Dominguez Benitez Court's "affected the outcome" requirement is a way to show the third prong of the plain error test). Further, in considering whether there was error and whether it affected substantial

9

rights, "we may consider the whole record, not just the plea colloquy." Moriarty, 429 F.3d at 1020 n.4.

## B.    Perez's Rule 11 Claim

On appeal, Perez claims his plea was not knowing because during the plea colloquy the district court: (1) did not discuss the elements of the charges; and (2) did not confirm on the record that Perez and his attorney had reviewed or discussed the indictment or the charges.

The district court must ensure that a defendant's guilty plea is knowing and voluntary. United States v. Hernandez-Fraire, 208 F.3d 945, 949 (11th Cir. 2000). To that end, Rule 11 requires the district court, before accepting the defendant's guilty plea, to address the defendant personally in open court and inform the defendant of, and make sure he understands, certain matters. See Fed. R. Crim. P. 11(b)(1). Rule 11 explicitly requires the district court to cover "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P 11(b)(1)(G).

"[T]here is no one mechanical way" or "rigid formula" for how the district court must inform the defendant of the nature of the charges. United States v. Wiggins, 131 F.3d 1440, 1443 (11th Cir. 1997); United States v. Presendieu, 880 F.3d 1228, 1238 (11th Cir. 2018). And, "Rule 11 does not specify that a district court must list the elements of the offense." Presendieu, 880 F.3d at 1238. Instead, each plea colloquy is assessed individually and may be done in different

ways based on various factors, such as the simplicity or complexity of the charges and the defendant's sophistication and intelligence. United States v. Camacho, 233 F.3d 1308, 1314 (11th Cir. 2000); Wiggins, 131 F.3d at 1443.

At bottom, the district court must ensure that three core concerns underlying Rule 11 are met: (1) the guilty plea is free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant is aware of the direct consequences of pleading guilty. Camacho, 233 F.3d at 1314. "This Court has upheld plea colloquies that fail to address an item expressly required by Rule 11 so long as the overall plea colloquy adequately addresses those three core concerns." United States v. Monroe, 353 F.3d 1346, 1354 (11th Cir. 2003). Perez does not contend he was coerced or unaware of the consequences of pleading guilty. Rather, his claim is only that the district court did not adequately advise him of the nature of the charges.

Based on the record as a whole, we conclude that Perez understood the nature of the charges against him. First, the district court confirmed that Perez's attorney, with the help of an interpreter, had read the entire plea agreement to him, and that Perez had fully discussed the plea agreement with his attorney. The plea agreement identified the charge in each count and cited the relevant statute of conviction.

11

Second, and perhaps most importantly, the detailed factual proffer, signed by Perez and his attorney, largely tracked the language of the indictment and effectively incorporated all of the elements of Perez's offenses. See Presendieu, 880 F.3d at 1239 (noting that "in some cases, a factual proffer may set forth in such detail the facts of the crime that it effectively incorporates the substance of the elements of the offense"). Moreover, during the plea colloquy, the district court recited the full proffer almost verbatim and out loud to Perez and the interpreter.

For example, Perez pled guilty to Count 1, which charged Perez with conspiring to use and traffic in unauthorized access devices, namely credit card account numbers, in violation of 18 U.S.C. § 1029(b)(2), and Count 2, which charged him with actually using the unauthorized access devices, in violation of 18 U.S.C § 1029(a)(2).[2] A defendant commits access device fraud conspiracy when he conspires with two or more persons to the commit one of the substantive access device offenses in 18 U.S.C. § 1029(a). 18 U.S.C. § 1029(b)(2). In Perez's case, the substantive "use" offense required proof that "the defendant : (1) 'knowingly' used 'one or more unauthorized access devices,' (2) 'with intent to defraud,' (3) to

---

[2]An "access device" includes cards, codes, account numbers, and other means of account access "that can be used, alone or in conjunction with another access device," to obtain items of value. 18 U.S.C. § 1029(e)(1). An "unauthorized access device" is "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." Id. § 1029(e)(3).

12

obtain anything having an aggregate value of '$1,000 or more' during a one-year period, and (4) such use 'affect[ed] interstate and foreign commerce.'" United States v. Klopf, 423 F.3d 1228, 1240 (11th Cir. 2005) (quoting in part 18 U.S.C. § 1029(a)(2)) (footnote omitted).

The factual proffer, as recited by the district court, tracked Counts 1 and 2 and stated that Perez and his codefendants had "conspired with each other and with other persons" to and "knowingly did, with the intent to defraud, traffic in and use account numbers issued to other persons to purchase . . . items of value aggregating $1,000 or more" during the conspiracy period and that Perez's conduct had "affected interstate and foreign commerce." The factual proffer further stated that Perez had used credit card account numbers registered to victims V.J., E.G., and R.A., that those victims did not authorize Perez to use their credit card account numbers, and that Perez knew that those credit card account numbers belonged to real people. In other words, the factual proffer effectively incorporated all the elements of the offenses charged in Counts 1 and 2.

The same is true for Count 6. To convict a defendant of aggravated identity theft, "the government must prove that the defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to a felony enumerated in [18 U.S.C.] § 1028A(c)," which includes access device fraud. Presendieu, 880 F.3d at 1240

13

(quotation marks omitted); 18 U.S.C. §§ 1028A(c)(4), 1029. An "access device" is a "means of identification." 18 U.S.C. § 1028(d)(7)(D). Further, the defendant must have known that the means of identification he unlawfully used in fact belonged to another person. Flores-Figueroa v. United States, 556 U.S. 646, 647, 129 S. Ct. 1886, 1888 (2009).

In Count 6, the "means of identification" Perez was charged with using was victim R.A.'s credit card account number. Perez used the credit card account numbers during the access device fraud offenses charged in Counts 1 and 2. In this regard, the district court's recitation stated that on September 29, 2016, Perez, in the name of Ariel Sosa Viamontes, purchased $27,560 worth of stone tile from Haifa Limestone "using credit card account number ending in 3867, registered to R. A.," that R.A. "did not authorize [Perez] to possess or use" the credit card account number, and that Perez "knew the credit card account number issued to R. A. belonged to a real person."

Finally, Counts 10 and 11 charged Perez with conspiracy to possess, and the possession of, fifteen or more unauthorized access devices, respectively. To prove the object of this conspiracy, the underlying possession offense, the government was required to show that the defendant "knowingly and with intent to defraud possess[ed] fifteen or more counterfeit or unauthorized access devices." 18 U.S.C. § 1029(a)(3).

14

As to these counts, the district court's recitation of the factual proffer stated that between September 22, 2016 and October 27, 2016, Perez and a codefendant "conspired to and knowingly did, with intent to defraud, possess 15 or more credit card numbers issued to other persons" and that Perez's "conduct affect[ed] interest state and foreign commerce." The proffer further elaborated that Perez received from his codefendant via text messaging three credit card account numbers on September 22, 2016, and another five credit card account numbers on October 20, 2016, and he maintained possession of them in his cell phone. On October 27, 2016, Perez possessed nineteen credit card account numbers in his cell phone that his codefendant had transferred to him via text messaging. Perez knew that all nineteen credit card account numbers belonged to real persons and that he did not have authorization to possess those numbers.

In sum, the factual proffer, which the district court recited to Perez, tracked the language of the indictment and effectively contained all the elements of each offense to which Perez pled guilty. Moreover, during the plea colloquy, the district court confirmed that the factual proffer had been translated into Spanish for Perez before he signed it. After the district court reviewed the proffer out loud to Perez, Perez agreed that the facts recited in it were true and would have been proved by the government had the case gone to trial.

15

At no point did Perez indicate any misunderstanding about the nature of the charges. See Presendieu, 880 F.3d at 1241 (concluding that the defendant understood the nature of the charges based on the detailed nature of the factual proffer that "contained all of the elements of his two offenses," the defendant's sophistication and intelligence, and the fact that "he never indicated any misunderstanding of the charges"). In fact, after reviewing the factual proffer with Perez, the district court accepted his guilty plea, making the express finding that Perez was "fully competent and capable of entering an informed plea," and that Perez was "aware of the nature of the charges and the consequences of his plea based upon his conversations with his attorney and the colloquy before the Court." Perez has not shown that the district court's explicit fact finding was clearly erroneous. See Presendieu, 880 F.3d at 1241; Wiggins, 131 F.3d at 1443.

Further, the record indicates that Perez had a GED, did not suffer from any mental infirmity, and was familiar with the criminal justice process, having twice before been convicted under state law of fraudulent use of credit cards. Perez had no difficulty understanding the district court during the plea proceedings.

16

Under the circumstances and given that the detailed factual proffer in effect covered the elements of the offenses, Perez's express and unreserved consent to the proffer shows that he understood the nature of the charges against him.[3]

## D.    Affects Substantial Rights

Alternatively, even assuming arguendo that the district court committed a Rule 11(b)(1)(G) error that was plain, Perez did not establish that the error affected his substantial rights.  This is so because Perez does not assert, much less prove, that he wishes to withdraw his guilty pleas; nor does he claim that, but for the Rule 11 error, he would not have pled guilty.  See Dominguez Benitez, 542 U.S. at 83, 124 S. Ct. at 2340 (requiring the defendant to show a reasonable probability that he would not have pled guilty absent the Rule 11 error).  To the contrary, Perez's appeal brief asks this Court to vacate his guilty plea and sentence "and in the event the Defendant continues to be inclined to enter a guilty plea," to direct the district court to conduct a new plea hearing and sentencing.

We note also that Perez received a substantial benefit from his guilty pleas. The government dropped two counts of aggravated identity theft, which carried mandatory consecutive two-year prison terms and would have almost doubled his

---

[3]Because "[t]he task of performing a Rule 11 colloquy is important," we, like this Court in Presendieu, encourage judges to take advantage of Federal Judicial Center's Benchbook for U.S. District Court Judges, "which contains sections on such topics as taking guilty pleas." Presendieu, 880 F.3d at 1242 n.5.

sentence had he proceeded to trial and been convicted by the jury. See 18 U.S.C. § 1028A(a)(1). In sum, Perez has failed to carry his burden to show plain error that affected his substantial rights.

### III.  SENTENCING CLAIM

Perez argues that the district court plainly erred by increasing his offense level by two levels under U.S.S.G. § 2B1.1(b)(11)(B)(i) because he "produced" unauthorized access devices. For the reasons that follow, we agree with the government that Perez's sentencing claim is barred by his sentence-appeal waiver.

We review de novo the validity of a sentence appeal waiver. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008). A sentence appeal waiver will be enforced if it was made knowingly and voluntarily. Id. Establishing a knowing and voluntary waiver requires showing that either: (a) the district court specifically questioned the defendant about the waiver during the plea colloquy; or (b) the record makes clear that the defendant otherwise understood the full significance of the waiver. Id. A valid appeal waiver bars difficult or debatable legal issues or even blatant error. United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005).

Here, the sentence appeal waiver in Perez's plea agreement is valid and enforceable. In the plea agreement, Perez acknowledged that he understood that he had the right to appeal his total sentence and restitution order and waived that right

18

unless: (1) his total sentence exceeded his guidelines range as established by the district court; (2) his sentences exceeded the applicable statutory maximum penalties; or (3) the government appealed the total sentence. The appeal waiver provision also contained an acknowledgement that Perez had discussed it with his attorney.

During the plea colloquy, the district court specifically informed Perez of right to appeal, the sentence-appeal waiver provision in his plea agreement, and the exceptions to the waiver. In response, Perez indicated that he understood. Perez also indicated that he had discussed the sentence-appeal waiver with his attorney and that he had entered it knowingly and voluntarily.

First, Perez's 37-month total sentence for Counts 1, 2, 10 and 11 does not exceed Perez's advisory guidelines range of 30 to 37 months, as determined by the district court. Perez's 24-month sentence for Count 6 was the advisory guidelines sentence for that count. Therefore, his sentences do not exceed advisory guidelines ranges as determined by the district court. Second, Perez's sentences do not exceed their applicable statutory maximums. Perez's concurrent 37-month sentences are below the 5-year statutory maximum for Counts 1 and 10 and below the 10-year statutory maximum for Counts 2 and Count 11. Perez's 24-month consecutive sentence for Count 6 is the mandatory minimum term required by statute and below the statutory maximum of life. Third, the government did not

19

appeal.  Accordingly, none of the exceptions to Perez's sentence-appeal waiver apply, and we must dismiss Perez's sentencing claim.

For the reasons discussed above, we affirm Perez's convictions and dismiss his appeal to the extent it challenges his sentence.

**AFFIRMED IN PART, DISMISSED IN PART.**