# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-2728
_____

United States of America

*Plaintiff - Appellee*

v.

Michael A. Smith

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 16, 2014
Filed: June 27, 2014

_____

Before RILEY, Chief Judge, BEAM and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

This case calls upon us to interpret 18 U.S.C. § 39A(a) for the first time. This subsection imposes criminal liability on anyone who "knowingly aims the beam of a laser pointer at an aircraft in the special aircraft jurisdiction of the United States, or at the flight path of such an aircraft." 18 U.S.C § 39A(a). A jury convicted Michael

A. Smith of violating § 39A(a) after which the district court[1] sentenced him to 24 months in prison and 3 years of supervised release. Smith challenges his conviction, arguing the district court should have read § 39A(a) to provide Smith a mistake-of-fact defense based upon his reasonable belief that his laser would not reach the targeted aircraft. Claiming the word "aims" "carries with it an 'intent to hit' the object," Smith argues the district court erred in (1) excluding expert testimony as to the perceived range of a laser, and (2) rejecting his defense instructions. Because we do not read § 39A(a) to require an "intent to hit," we affirm.[2]

## I.    BACKGROUND
### A.    Factual Background

In the early morning hours of July 11, 2012, authorities in Omaha, Nebraska, learned the cockpit of an inbound Boeing 737 had been illuminated by a laser. The local police department dispatched a helicopter to locate the laser. As the police helicopter approached the approximate location of the laser's source, Smith, standing in his backyard, directed his laser pointer's green beam at the helicopter, illuminating its cockpit. Smith's beam struck the helicopter several times, but when the helicopter got close, his beam disappeared. Unable to pinpoint Smith's location, the helicopter was forced to depart. But as the helicopter began to do so, Smith again shone his laser's beam on the helicopter. The helicopter resumed its approach until, again, the beam disappeared. In what the helicopter pilots described as a back-and-forth game of "cat-and-mouse," the helicopter approached Smith when the laser was visible and feigned departure when it was not. Ultimately, the pilots were able to identify Smith's exact location and dispatched a ground officer.

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

[2]We have appellate jurisdiction under 28 U.S.C. § 1291.

The ground officer found Smith standing in his backyard pointing a green laser pointer skyward in the direction of the helicopter. The officer handcuffed Smith and removed him for questioning. According to the arresting officer's testimony, Smith "stated that earlier he had been shining [the laser] at aircraft that he thought were far enough away that it wouldn't actually reach those aircraft." Smith "denied actually shining [the laser] at the police" helicopter.

## B.     Procedural History

A grand jury indicted Smith of knowingly aiming a laser pointer's beam at the police helicopter in violation of 18 U.S.C. § 39A(a). The day before trial, Smith submitted proposed jury instructions, including a theory-of-defense instruction proposing he could not have "'knowingly' aimed the beam at the aircraft" if he "mistakenly believed that the laser beam could not travel the distance necessary to reach the aircraft."

On the first day of trial, the parties asked the district court to provide its preliminary interpretation of § 39A(a) and asked, in particular, whether the statute required the government to prove Smith believed his laser's beam would strike the aircraft. The district court concluded, "[§] 39A is violated whenever a person points a laser pointer at what the person knows to be an aircraft, regardless of that person's belief, whether it be reasonable or not, that the laser pointer will not reach the aircraft or affect its crew." First, the district court noted "the term 'knowingly' . . . clearly applies to what the laser is pointed at"—that is, "the defendant has to know that he's aiming . . . a laser beam at an aircraft" as opposed to believing the target is "a shooting star" or "a satellite." The district court then reasoned the central question revolved around the meaning of "knowingly aim." The district court read "to aim at" as simply meaning "to point[ ]at," reasoning this definition was supported by the statutory text's common meaning, its legislative history, and the circumstances underlying the statute's enactment. Based on this interpretation, the district court ultimately refused Smith's proposed theory-of-defense instruction.

During the second day of trial, Smith called a physics professor, Dr. David Sidebottom. Following the government's objection, Dr. Sidebottom testified during an offer of proof that a layer of atmosphere close to the ground contains dust which reflects the laser's beam. Dr. Sidebottom explained that once the beam clears this dust layer, there can be fewer particles to reflect the laser, making it sometimes appear as if the beam stops abruptly when it actually continues on. The district court excluded Dr. Sidebottom's testimony because under the district court's interpretation of § 39A(a), it did not matter whether Smith believed—reasonable or not—that the beam could reach the helicopter.

The jury found Smith guilty of violating § 39A(a). Smith now appeals his conviction.

## II. DISCUSSION

Smith's appeal targets the district court's exclusion of Dr. Sidebottom's testimony and rejection of Smith's proposed jury instructions. As both parties agree, the foundation of these challenges and the crux of this appeal is the definition of the phrase "knowingly aim." Section 39A(a) covers an offender who "knowingly aims the beam of a laser pointer at an aircraft . . . or at the flight path of such an aircraft." Smith contends this language requires a defendant to knowingly point a laser beam *intending the beam to strike the targeted object*, whereas the government defends the district court's understanding by arguing an offender need only *direct the beam towards* the target. We review de novo this question of statutory interpretation. See United States v. Zaic, 744 F.3d 1040, 1042 (8th Cir. 2014).

"As in all such cases, we begin by analyzing the statutory language," Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010), "giv[ing] words their 'ordinary, contemporary, common meaning' unless they are otherwise defined in the statute itself," Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n, 742 F.3d 818, 821 (8th Cir. 2014) (quoting United States v. Friedrich, 402 F.3d 842, 845 (8th Cir. 2005)). If the

language's meaning is unambiguous when "read in its proper context," McCarthy v. Bronson, 500 U.S. 136, 139 (1991), "then, this first canon is also the last: 'judicial inquiry is complete,'" Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) (quoting Rubin v. United States, 449 U.S. 424, 430 (1981)). Here, our inquiry begins and ends with this first step.

### A. Text and Context
#### 1. Knowingly

Smith's opening salvo is his argument that "the district court only applied 'knowingly' to the 'aircraft' element of § 39A and did not apply 'knowingly' to the 'aim the beam of a laser pointer at' element." This argument misses its mark. The district court never suggested "knowingly" modifies only the "aircraft" element but instead recognized there was *no question* the *mens rea* requirement modified the "aircraft" element and then moved on to explain the real task at hand was determining "how 'knowingly' modifies 'aims'" and, more importantly, what "Congress meant by the word 'aim.'" Thus, contrary to Smith's contention, the district court correctly recognized "knowingly" modifies both the "aim" and "aircraft" elements. See, e.g., United States v. Bruguier, 735 F.3d 754, 758 (8th Cir. 2013) (en banc) (noting our presumption is to read "'a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element,'" unless "'special contexts or . . . background circumstances'" call for a different reading (omission in original) (quoting Flores-Figueroa v. United States, 556 U.S. 646, 652 (2009))).

Nor does the district court's interpretation of "to aim at"—that is, "to point at"—wash away the "knowingly" requirement. Under the district court's interpretation, "knowingly" still modifies "aim" to require that an offender understand he or she is pointing or directing the laser's beam at an aircraft, regardless whether the offender intends to strike the aircraft.

There is thus no real disagreement as to whether "knowingly" modifies "aim." Smith's real argument, as the district court correctly observed, comes down to the proper construction of the word "aim."

### 2. Aim

Smith contends the statute's use of "aim" unambiguously "carries with it an 'intent to hit' the object" targeted. This word's common American usage necessitates no such intent requirement. See, e.g., New Oxford American Dictionary 33 (3d ed. 2010) (defining "aim" paired with a direct object as "point or direct (a weapon or camera) at a target: *aim the camcorder at some suitable object*"); The American Heritage Dictionary of the English Language 36 (5th ed. 2011) (defining the verb as "[t]o direct (a weapon or camera) toward a point" and "[t]o direct or propel (an object, such as a ball) toward a point").

The district court looked to Webster's Third New International Dictionary 45 (1993), which defines the verb "to aim" as "to point in a particular direction or at a particular object." Smith asserts "the district court read the wrong definition from Webster's Third New International." In his brief and at oral argument, Smith proposed one of the dictionary's other definitions: "to direct or point (as a weapon or missile) at or so as to hit an object." Id. This, Smith vigorously asserts, is the "proper" definition and the one which "Congress intended to be used." But even if that were true (and we see nothing in the statute mandating the use of this particular definition), Smith's preferred definition still falls short. Under this disjunctive definition, a defendant can "aim" by directing the beam "at . . . an object" *or* "so as to hit an object." Id.; see also Random House Webster's Unabridged Dictionary 42 (2d ed. 2001) (providing the transitive definition: "to position or direct (a firearm, ball, arrow, rocket, etc.) so that, on firing or release, the discharged projectile will hit a target *or* travel along a certain path" (emphasis added)). The usage examples for this definition show that "a small cannon" can be "aimed into space" and "a camera" can be "aimed at the scene." Webster's Third New International, supra, at 45. Thus,

aiming may accompany an intent to strike the target, but the word's common meaning is not limited to such instances.

Ordinary use of the word "aim" confirms this understanding. Consider the familiar phrase "Ready, aim, fire!" A ceremonial commander at a military memorial orders the riflemen to ready their rifles, aim the barrels, and then pull the triggers. The riflemen dutifully obey the second of these three orders not by manifesting any present intent for either barrel or bullet to strike any target, but instead by directing the rifle's gaze. By using the term "aim at" rather than some result or contact oriented term—for instance, "knowingly illuminating an aircraft"—Congress specified the act of directing the active laser pointer's beam, not of manifesting one's intent to strike the target.

Congress's clear choice is amplified by the "'the design of the statute as a whole and . . . its object and policy.'" Dada v. Mukasey, 554 U.S. 1, 16 (2008) (quoting Gozlon-Peretz v. United States, 498 U.S. 395, 407 (1991)). By also criminalizing the act of knowingly aiming at an aircraft's "flight path," Congress illustrates its intent to discourage those who would direct the beam so as to harry the aircraft without necessarily intending to strike it—including the individual who knowingly directs the laser toward a recognized aircraft, but neglects to consider the power of his device or the effective range of his laser.

Relying on plain text and common usage, we conclude § 39A(a)'s requirement that the laser beam be "knowingly aim[ed]" does not require an offender to intend the beam to strike the aircraft or flight path in question.[3]

---

[3]Smith seeks support in legislative history, focusing considerable energy on the passing word-usage in select statements by legislative proponents. We are not distracted from the plain meaning of a criminal statute by such "legislative incunabula," Taylor v. United States, 495 U.S. 575, 603 (1990) (Scalia, J., concurring). See United States v. Jungers, 702 F.3d 1066, 1069 (8th Cir. 2013). If

**B. Lenity**

The rule of lenity requires a criminal statute be construed in a defendant's favor where, "'after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended.'" United States v. Castleman, 572 U.S. ___, ___, 134 S. Ct. 1405, 1416 (2014) (quoting Barber v. Thomas, 560 U.S. 474, 488 (2010)). This rule is based on the need to provide "fair warning[,] . . . in language that the common world will understand, of what the law intends to do if a certain line is passed." United States v. Bass, 404 U.S. 336, 348 (1971) (internal quotation omitted). Yet penal laws "should not be construed so strictly as to defeat the obvious intention of the legislature." United States v. Warren, 149 F.3d 825, 828 (8th Cir. 1998). "[G]rievous ambiguity or uncertainty" necessary to invoke lenity requires more than "[t]he simple existence of some statutory ambiguity" because "most statutes are ambiguous to some degree." Muscarello v. United States, 524 U.S. 125, 138 (1998) (internal quotation omitted).

Smith does not invoke this rule, instead contending the statute is unambiguous in his favor. As we have already explained, § 39A(a)'s common and ordinary meaning gave Smith "fair warning" his conduct violated the law. Bass, 404 U.S. at 348.

**III. CONCLUSION**

Because the district court correctly interpreted 18 U.S.C. § 39A(a), it did not err in excluding Dr. Sidebottom's irrelevant testimony and rejecting Smith's inapposite proposed instructions. We affirm.

_____

we were to consider such sources in this case, the legislative history here is, "as usual, inconclusive," Flores-Figueroa, 556 U.S. at 658 (Scalia, J., concurring).