# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3070

_____

United States of America

*Plaintiff - Appellee*

v.

Jamie Goad

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: April 17, 2015
Filed: June 11, 2015

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

The second time the district court[1] revoked Jamie Goad's supervised release, it sentenced him to five months in prison and ordered him to reside in a residential reentry center for 120 days after his release from prison. Within two months of his

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

residency at the Gerald R. Hinzman Residential Reentry Center (Hinzman Center), Goad absconded. Goad was soon arrested and indicted for escaping from custody in violation of 18 U.S.C. § 751(a). Goad moved to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(3)(B), contending § 751(a) does not criminalize his abscondence because he was not in "custody" while residing at the Hinzman Center. The district court denied his motion. Goad conditionally pled guilty, reserving the right to appeal the denial of his motion to dismiss the indictment. Only that issue is before us.

Goad's appeal raises a straightforward question of statutory interpretation: whether "residency in a residential reentry center as a condition of supervised release constitutes 'custody' under § 751(a)." We review this challenge to the indictment de novo. See United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008) (explaining the sufficiency of an indictment is reviewed de novo); see also United States v. Smith, 756 F.3d 1070, 1073 (8th Cir. 2014) (stating questions of statutory interpretation are reviewed de novo). We begin our interpretation, as always, with the statute's text, "'giv[ing] words their ordinary, contemporary, common meaning'" wherever a statutory definition is absent. Smith, 756 F.3d at 1073 (alteration in original) (quoting Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n, 742 F.3d 818, 821 (8th Cir. 2014)). If the text's "meaning is unambiguous when 'read in its proper context,'" as it is here, we look no further. Id. (quoting McCarthy v. Bronson, 500 U.S. 136, 139 (1991)).

Section 751(a) condemns those who

escape[] or attempt[] to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful

arrest, . . . if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense.

"[A] person may be in custody for purposes of § 751(a) even though the physical restraints upon him are minimal and even though the custody be deemed constructive, rather than actual." United States v. Cluck, 542 F.2d 728, 736 (8th Cir. 1976). And "it is not necessary . . . that the escape be from a conventional penal housing unit such as a cell or cell block." Id. at 731. "Specifically, the escape may be from a hospital," id., or a pre-release "halfway house," McCullough v. United States, 369 F.2d 548, 549-50 (8th Cir. 1966), "in which the escapee was properly confined," Cluck, 542 F.2d at 731. See also United States v. Sack, 379 F.3d 1177, 1179-80 (10th Cir. 2004) (holding pretrial detainee's court-ordered residency at a halfway house was "custody" under § 751(a)); United States v. Rudinsky, 439 F.2d 1074, 1076-77 (6th Cir. 1971) ("[I]t is apparent that the Treatment Center's restrictions [on a pre-release detainee] deprived [the detainee] of his freedom of movement and association. He was therefore in custody within the purview of 18 U.S.C. § 751." (citing McCullough, 369 F.2d 548)).

Goad contends his case is different because "the conditions [of residency at the Hinzman Center were] far less restrictive than prison or jail . . . *and* [he was] subject only to the non-penological supervision of the United States Probation Office." Distinguishing his case from the pretrial and pre-release detention cases Cluck and Sack, Goad stresses the "non-penological, transitional purposes of supervised release," apparently believing his confinement was "'much more analogous to probation than . . . to imprisonment.'" (Quoting United States v. Burke, 694 F.3d 1062, 1064 (9th Cir. 2012)). Goad relies on the Ninth Circuit's decision in Burke to propose, "[A]n individual is not in 'custody' when he (1) has completed a term of imprisonment and no longer is in the custody of the Attorney General and/or the [Bureau of Prisons], and instead is subject only to the supervision of the United States

-3-

Probation Office, *and* (2) is subject to conditions of supervised release that are less restrictive than those in a prison or jail setting." (Emphasis added).

We are unmoved by Goad's attempt to contrast the conditions of his residency with those of a prison or jail. His conditions were no less custodial than those in Cluck and McCullough. It is enough that (1) Goad was court-ordered to reside for 120 days at the Hinzman Center and obey its rules; (2) the Hinzman Center prohibited departures without authorization; and (3) Goad left early without obtaining authorization and failed to return.[2] See, e.g., McCullough, 369 F.2d at 550 (finding a § 751(a) violation where, "[i]n clear violation of the expressed rules of the Center[, defendants] failed to return at the proper time and fled from . . . custody"); cf. Cluck, 542 F.2d at 733, 736 (finding defendant was in "custody" at a hospital, but noting his minimal restraints and "observ[ing] that in the course of his testimony the defendant did not indicate that he ever thought that he was free to leave the institution").

Given this starting point, we see no reason to employ a different standard of custody based solely on subtle differences in the identity of the custodian. The statute broadly covers "*any* custody under or by virtue of *any* process issued under the laws of the United States by *any* court, judge, or magistrate judge." 18 U.S.C. § 751(a) (emphasis added); see also United States v. Edelman, 726 F.3d 305, 309 (2d Cir. 2013) (noting the breadth and clarity of this language); Sack, 379 F.3d at 1179-80 ("[B]ecause the plain language of the statute allows for a charge of escape based on 'any custody' resulting from a court order there is no reason to conclude that a

---

[2]Our earlier precedents in Cluck and McCullough are unaffected by the later dicta in Hayes v. United States, 281 F.3d 724, 725 (8th Cir. 2002), "that required residence in a halfway house is not considered 'custody' for . . . the felony of escape from custody under 18 U.S.C. § 751." The only issue in Hayes was the meaning of "custody" as used in Application Note 4 of United States Sentencing Guideline § 3C1.1(A). See id.; see also Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (explaining we are bound by the earliest prior panel opinion).

defendant must be in the custody of the Attorney General."). Contrasting this clause with the others in § 751(a), all of which specify the necessary custodian, it becomes all the more clear that the "any custody" clause treats all custodians alike. The confinement need only be "under or by virtue of any process issued" by a judge or court under federal law. 18 U.S.C. § 751(a); see also United States v. Foster, 754 F.3d 1186, 1194 (10th Cir. 2014). That requirement was satisfied here when the district court sentenced Goad to spend his first 120 days of supervised release residing at a residential reentry center.

Nor do the "non-penological, transitional purposes of supervised release" change our view. Nothing in § 751(a) suggests the purpose of the confinement is at play, and we fail to see how the use of a residential reentry center during supervised release is any more "transitional" or "non-penological" than the pre-release halfway houses in McCullough and Rudinsky.

We therefore join the Second and Tenth Circuits in rejecting Burke's interpretation and hold that a defendant's unauthorized departure from his residential reentry facility, in violation of both the rules of the facility and the terms of his supervised release, constitute escape from "custody" within § 751(a).[3] See Foster, 754 F.3d at 1194; Edelman, 726 F.3d at 309. We affirm.

———————————————————

[3]We reject Goad's lenity argument because the statute gave him "fair warning" his flight was prohibited and contained no "grievous ambiguity or uncertainty" on this point. Smith, 756 F.3d at 1075 (quotations omitted); see also Foster, 754 F.3d at 1193-94 (discarding defendant's void-for-vagueness and lenity arguments); Edelman, 726 F.3d at 309-10 (rejecting defendant's lenity argument).