# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-3685

———————————————

United States of America

*Plaintiff - Appellee*

v.

Autumn Marie Nichols

*Defendant - Appellant*

———————

Appeal from United States District Court
for the District of Minnesota

———————

Submitted: September 21, 2020
Filed: January 19, 2021
[Unpublished]

———————

Before KELLY, WOLLMAN, and STRAS, Circuit Judges.

———————

PER CURIAM.

Autumn Nichols pleaded guilty to robbery, *see* 18 U.S.C. §§ 2, 1951, a crime she committed when she was only 19 years old. The district court[1] sentenced her to

———————————————

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

120 months in prison, well below the recommended Guidelines range of 188 to 235 months. Although she argues that the range was too high and that her overall sentence is unreasonable, we affirm.

The first set of challenges arises out of her decision to abscond from a halfway house after she pleaded guilty. This decision led the district court to both grant an obstruction-of-justice enhancement and deny an acceptance-of-responsibility reduction, which substantially increased the range. *See* U.S.S.G. § 3C1.1 (obstruction-of-justice enhancement); *id.* § 3E1.1 (acceptance-of-responsibility reduction).

We review the interpretation of the Sentencing Guidelines de novo. *See United States v. Nguyen*, 339 F.3d 688, 690 (8th Cir. 2003). Obstruction of justice includes, among other acts, "escaping or attempting to escape from custody before trial or sentencing." U.S.S.G. § 3C1.1 cmt. n.4(E); *see also United States v. Smith*, 282 F.3d 1045, 1047 (8th Cir. 2002) ("An application note is . . . binding unless it is plainly erroneous or conflicts with the Constitution, a federal statute, or the guideline it seeks to interpret."). We have already concluded that court-ordered residency at a halfway house is a form of "custody." *See United States v. Goad*, 788 F.3d 873, 876 (8th Cir. 2015). It follows that absconding from a halfway house and remaining a fugitive for two-and-a-half months counts as "escaping . . . from custody." U.S.S.G. § 3C1.1 cmt. n.4(E); *see Hayes v. United States*, 281 F.3d 724, 725–26 (8th Cir. 2002) (affirming an obstruction-of-justice enhancement when a defendant absconded from a halfway house before sentencing); *United States v. Martinez*, 234 F.3d 1047, 1048 (8th Cir. 2000) (per curiam) (same).

Nichols recognizes that this line of authority exists, but she argues that the district court should have disagreed with the Sentencing Guidelines on policy grounds. It is clear, however, that the district court was under no duty "to do so,"

even if a "policy disagreement" can provide a reason to "deviate." *United States v. Manning*, 738 F.3d 937, 947 (8th Cir. 2014) (quotation marks omitted).

Nor is this the "extraordinary case[] in which" a defendant is still entitled to an acceptance-of-responsibility reduction, despite having obstructed justice. U.S.S.G. § 3E1.1 cmt. n.4. As the commentary explains, "[c]onduct resulting in an enhancement [for obstruction of justice] ordinarily indicates that the defendant has not accepted responsibility for [her] criminal conduct." *Id.* At a minimum, the district court had no obligation to conclude otherwise on these facts. *See Nguyen*, 339 F.3d at 690 (reviewing the district court's findings on an acceptance-of-responsibility reduction "for clear error").

Finally, the district court adequately explained its reasoning and arrived at a substantively reasonable sentence. *See United States v. Guarino*, 517 F.3d 1067, 1068 (8th Cir. 2008); *United States v. Feemster*, 572 F.3d 455, 461–62 (8th Cir. 2009) (en banc) (applying an abuse-of-discretion standard). It mentioned the statutory sentencing factors, confirmed that it had considered them, and made clear that it had imposed a sentence that was no "greater than necessary" to deter "future criminal conduct." *See* 18 U.S.C. § 3553(a).

To be sure, Nichols presented several mitigating circumstances, including her youth, traumatic upbringing, and limited role in the robbery. But there is no reason to believe that the district court failed to consider them, particularly once it decided to vary downward from the recommended range. *See United States v. McKanry*, 628 F.3d 1010, 1022 (8th Cir. 2011) ("Where a district court has sentenced a defendant below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." (quotation marks and brackets omitted)). In the end, her argument really comes down to a disagreement with how much weight it placed on these factors, which "alone does not justify reversal." *United States v. Townsend*, 617 F.3d 991, 994 (8th Cir. 2010) (per curiam); *see also United States v. Nguyen*, 829 F.3d 907, 926 (8th Cir. 2016)

(acknowledging the "wide latitude" that district courts have to weigh the statutory sentencing factors).

We accordingly affirm the judgment of the district court.

KELLY, Circuit Judge, dissenting.

Autumn Nichols appeals her sentence, arguing that the district court committed procedural error in calculating the advisory Guidelines range and that the sentence imposed is greater than necessary to meet the goals of 18 U.S.C. § 3553(a). Nichols was 19 years old when she agreed to drive two co-defendants to and from the scene of a robbery where one of the victims tragically and senselessly died. Her role in the offense was comparatively limited: she drove the two men to the location and waited in the car a few blocks away for their return. She did not plan the robbery, did not go into the house where the robbery took place, and was not promptly told of the crime's tragic outcome. She received approximately six percent of the $50,000 her co-defendants stole.

Nichols waived her right to a trial and pleaded guilty to Hobbs Act robbery. The district court ordered that she stay at a halfway house until sentencing. Nichols, however, made the undoubtedly poor decision to leave the halfway house for a relative's home in Chicago. She was later arrested and taken into custody pending sentencing. Because she violated the terms of her release, the district court denied Nichols a reduction for acceptance of responsibility and imposed an enhancement for obstruction of justice when calculating her offense level. The result was that Nichols's decision to leave the halfway house raised her advisory Guidelines range from 108–135 months to 188–235 months. The district court sentenced her to 120 months in prison.

Although the Guidelines support the district court's calculations, they have not been mandatory since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), some 15 years ago. And although they are a valuable resource, the Guidelines are but one of several statutory factors to consider at sentencing. See 18 U.S.C. § 3553(a). As this case illustrates, the Guidelines can prove a blunt instrument, ill-suited to account for the unique characteristics of each defendant and each crime. Here, because Nichols's departure from the halfway house amounted to "obstruction of justice" under the Guidelines, any benefit she otherwise would have received for pleading guilty and accepting responsibility for her actions was cancelled out. Compare USSG § 3E1.1, Application Notes 1–3 (explaining that a defendant who admits involvement in the offense of conviction, takes personal responsibility for the offense, or pleads guilty before trial is eligible for a two-level reduction in the offense level) with USSG § 3C1.1, Application Note 4 (providing for a two-level increase if the defendant obstructs justice, including by fleeing custody or threatening a witness). In short, Nichols's single decision to leave the halfway house put her in essentially the same position—for purposes of the Guidelines calculation—as she would have been had she denied involvement in the robbery, shirked personal responsibility for her role in the crime, gone to trial, and even threatened a witness.

Although district courts must of course "correctly calculat[e] the applicable Guidelines range," the Supreme Court reiterated in Gall v. United States, that this number represents only "the starting point and the initial benchmark" for crafting an appropriate sentence. 552 U.S. 38, 49 (2007). After considering the Guidelines and the parties' respective sentencing arguments, district courts must then undertake the difficult task of weighing the § 3553(a) factors and "mak[ing] an individualized assessment based on the facts presented." Id. at 50. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the need for the sentence "to reflect the seriousness of the offense" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2).

In support of her argument that the sentence is substantively unreasonable, Nichols highlights the troubling and traumatic details of her young life. Most of these details remain under seal, and I will not review them here. Suffice it to say that the neglect and abuse that Autumn Nichols endured at home and elsewhere at the hands of adults in her life are astounding. It is difficult to imagine that these experiences did not affect her choices and her judgment. While these types of facts may not necessarily have a place in calculating the advisory Guidelines range, they are highly relevant to the § 3553(a) analysis.

Nichols ultimately received a below-Guidelines sentence. Yet regardless of the particular sentence imposed, a district court must still "set forth enough to satisfy the appellate court that [the sentencing judge] has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." Rita v. United States, 551 U.S. 338, 356 (2007). In this case, the district court listed the § 3553(a) sentencing factors for the record, stating only that it had taken them into account. The job of sentencing is no doubt a difficult one, and the district court is typically in the best position to engage with the record and weigh the various considerations in order to reach an appropriate sentence. But meaningful appellate review requires a meaningful explanation for the sentence imposed, particularly where the issues raised are not "conceptually simple." Id. at 359. Given the advisory nature of the Guidelines and considering Nichols's youth, traumatic childhood, and limited role in the robbery, the record here does not provide a reasoned basis for a sentence of 120 months' imprisonment. A sentence that does not take these factors fully into consideration is, in my view, substantively unreasonable. Respectfully, I dissent.

_____