# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-1862

_____

Torri M. Houston, Individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

Saint Luke's Health System, Inc.; Saint Luke's Northland Hospital Corporation

*Defendants - Appellees*

------------------------------

Secretary of Labor

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 13, 2023
Filed: August 11, 2023

_____

Before GRUENDER, ARNOLD, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Hourly employees of St. Luke's Health System allege that they were underpaid over several years due to their employer's timekeeping policy that rounded off time at the beginning and end of shifts. The district court granted summary judgment to St. Luke's on all claims. We vacate and remand.

**I.**

St. Luke's uses an automated timekeeping system. Employees clock in and out at the beginning and end of their shifts, and the system records the exact time. The system then applies a rounding policy. Clocked times within six minutes of a shift's scheduled start or end get rounded to the scheduled time for compensation purposes. For example, an employee who clocks in at 8:56 a.m. for a 9:00 a.m. shift would not be paid for those four minutes. Likewise, an employee who clocks out early at 4:54 p.m. for a shift ending at 5:00 p.m. would still be paid for those unworked six minutes.

Torri Houston, a former employee, sued on behalf of herself and similarly situated employees, claiming that St. Luke's violated the Fair Labor Standards Act's ("FLSA") overtime provisions by failing to fully compensate employees for work performed. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.103. She also brought an unjust-enrichment claim under state law. The district court certified two classes with different lookback periods: (1) an FLSA collective comprised of employees who worked for St. Luke's between September 2016 and September 2018;[1] and (2) an unjust-enrichment class comprised of all employees who worked for St. Luke's in Missouri between April 2012 and September 2018. Houston also asserted individual claims, one under the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.527, and one for breach of her employment contract.

---

[1]The FLSA authorizes collective actions, *see* 29 U.S.C. § 216(b), which are distinct from class actions governed by Federal Rule of Civil Procedure 23.

After limited yet substantial discovery, St. Luke's moved for summary judgment. It stipulated, for the purposes of its motion, that all employee time "on the clock" was compensable work time and that issues about *why* employees clocked in early or clocked out late were immaterial. *See* Fed. R. Civ. P. 56(c)(1)(A).

Each side submitted expert reports analyzing the rounding policy's effect on compensation. The employees' expert, Scott Baggett, analyzed pay records across all six years of data on a per-shift basis, a per-workweek basis, a per-employee basis, and overall. The St. Luke's expert, Deborah Foster, also analyzed pay records on a per-shift and per-employee basis but did so separately for three lookback periods. The parties agree that any minor differences in the data evaluated or in the conclusions reached by the reports are immaterial for summary judgment.

The reports show that the rounding policy benefited St. Luke's more often than not and across different time periods. Baggett reviewed more than 7 million shifts of 13,000 employees and determined that the rounding policy cut time from about half of shifts, added time to a little over a third, and had no effect on the rest. The net loss to employees increased steadily over time. On a per-employee basis, Bagget concluded that the policy cut time for nearly two thirds of employees and added time for only a third. Overall, he estimated that the policy favored St. Luke's to the tune of 74,000 employee-hours from April 2012 to September 2018. For damages, Baggett estimated about $140,000 in lost overtime pay for the two-year FLSA collective period and about $2.2 million in lost earnings for the Missouri unjust-enrichment class over the corresponding six-year period. As for Houston individually, from April 2012 to September 2018, Baggett determined that she lost time on nearly half of her shifts and gained time on only a fifth. Overall, she lost 7.6 hours, amounting to $205.13, or about $32 per year.

Foster's report tracks Baggett's. She analyzed three lookback periods: September 2016 to September 2018; September 2015 to September 2018, and April 2012 to September 2018. For each period, Foster concluded that about half of shifts had time cut and a little over a third had time added. She also found that across all

lookback periods, nearly two thirds of employees had net time lost. On average, those employees lost 6.5 hours in the first lookback, 8.5 hours in the second lookback, and 11.5 hours in the third lookback. For employees who had total net time added, the added time was about half the amount of time that their less fortunate colleagues lost. Of course, on a per-shift basis, any time lost was small because the rounding policy operates within a six-minute window.

The district court granted summary judgment to St. Luke's on all claims. For the FLSA collective, the court concluded that the rounding policy was neutral as applied because (1) the time lost per shift was not that much; (2) even if more employees lost time than gained, the rounding policy both added and subtracted time during the period, meaning that other time periods might show different results; and (3) on a per-shift basis, the rounding policy took time from about half of shifts while it added to or left neutral the other half. For Houston's Missouri wage claim, all agreed that it called for the same analysis, so it likewise failed. *See* Mo. Rev. Stat. § 290.505.4.

As for the Missouri unjust-enrichment claim, the court concluded that allowing St. Luke's to retain the benefit of the uncompensated work would not be inequitable because it resulted from a lawful and neutrally applied rounding policy. Similarly, the court concluded that St. Luke's did not breach Houston's employment contract because she was paid according to a lawful rounding policy to which she presumably assented under the contract.

Houston appeals. She argues that the district court erred by concluding that the rounding policy was neutral as applied. She maintains that she has presented sufficient evidence to raise a genuine dispute that the policy results in systematic undercompensation over time. We agree.

-4-

## II.

We review a grant of summary judgment *de novo*. *Lyons v. Conagra Foods Packaged Foods LLC*, 899 F.3d 567, 582 (8th Cir. 2018). We will affirm if the evidence, viewed in the light most favorable to the non-moving party, shows that no dispute of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.*

### A.

The FLSA requires employers to pay overtime compensation when employees work more than forty hours in a week. 29 U.S.C. § 207(a)(1). Longstanding regulations permit employers to "round" an employee's clocked start and end times for ease in calculating time worked. 29 C.F.R. § 785.48(b). Time clocks are not required, but

> [i]n those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded. Minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.

*Id.* § 785.48(a). Here, the parties stipulated that the employees engaged in compensable work at all times "on the clock." The regulation continues:

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it

-5-

is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b). The emphasis on ensuring that employees are "fully compensated" aligns with the FLSA principle that "[w]ork not requested but suffered or permitted is work time" that must be compensated. *See* 29 C.F.R. § 785.11. The reason that an employee works outside a scheduled shift time is immaterial. All that matters is that the employer "knows or has reason to believe that [the employee] is continuing to work." *Id.* If so, "the time is working time," *id.*, and a valid rounding policy must be "neutral, both facially and as applied," so that the employee is compensated for it, *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1288 (10th Cir. 2020); *see Corbin v. Time Warner Entertainment-Advance/Newhouse P'ship*, 821 F.3d 1069, 1075 (9th Cir. 2016).

Here, the parties agree that the rounding policy is facially neutral, but they disagree on whether, as applied, it fails "over a period of time" to compensate employees "for all the time they have actually worked." *See* 29 C.F.R. § 785.48(b). As an initial matter, St. Luke's argues that a facially neutral rounding policy can be neutral in application even if some employees are negatively impacted over a given period. The employees do not quarrel with that characterization but argue that the proper focus is on what happens to employees—whether some or as a whole—*in the long term*.

We have not confronted what it means for a rounding policy to "average[] out" such that employees are compensated properly. *See id.* By referring to averages "over a period of time," the regulation clearly does not require that the rounded time equal the actual worked time for *every* shift or workweek or payroll period. It will often be that over some time periods employees are undercompensated, while over other periods they are overcompensated or neutrally compensated. That is just the nature of dealing with averages. So, a single cherry-picked period is likely insufficient to demonstrate undercompensation in the long run. We must therefore distinguish statistical anomaly from discernable pattern.

Two cases are instructive. In *Aguilar v. Management & Training Corp.*, correctional officers presented unrebutted evidence that their employer's ten-minute rounding policy routinely resulted in undercompensation. 948 F.3d at 1274, 1287-89. The "representative [data] sample" showed that in almost all shifts, the officers were on the clock for longer than their scheduled shifts. *Id.* at 1288. Over a four-year period, 122 officers lost $350,000, or about $717 per officer per year. *Id.* at 1285. The Tenth Circuit emphasized that if the policy "routinely rounds off . . . compensable overtime, as the officers' evidence suggests, then the officers' rounding theory remains viable." *Id.* at 1289. The court reversed summary judgment to the employer.

In *Corbin v. Time Warner Enterprise-Advance/Newhouse Partnership*, an employee argued that a rounding policy violates the FLSA "unless *every* employee gains or breaks even over *every* pay period or set of pay periods analyzed." 821 F.3d at 1077. The Ninth Circuit disagreed. It emphasized that the rounding policy need only "average out *in the long-term*." *Id.* The employee's pay records showed that he sometimes gained and sometimes lost minutes and compensation, with a net deviation of only three minutes and fifteen dollars over the course of a year. *Id.* at 1079. The court concluded that this "fluctuat[ion] from pay period to pay period" was not enough to raise a genuine dispute of material fact as to whether the employer's rounding policy averaged out over time. *Id.* Indeed, the court observed that "a few more pay periods of employment may have tilted the total time/compensation tally in the other direction." *Id.*

We find these cases sufficiently illustrative of the concept for our purposes here. Houston has raised a genuine dispute that the rounding policy does not average out over time. No matter how one slices the data, most employees and the employees as a whole fared worse under the rounding policy than had they been paid according to their exact time worked. Thus, we need not resolve whether an employer runs afoul of the rounding regulation whenever it undercompensates *any* individual employees over a period of time or only when it undercompensates employees *as a whole*, including those who were overcompensated or neutrally compensated. Here,

the rounding policy did both. It resulted in lost time for nearly two thirds of employees, and those employees lost more time than was gained by their coworkers who benefited from rounding. This remains the case whether we look at a two-year, three-year, or six-year period. And unlike in *Corbin*, the losses here accrued with sufficient regularity to show a clear trend of undercompensation. Consider the data another way. Across all employees, on average, St. Luke's benefited one free hour of labor per year per employee. If we confine ourselves to only those employees who were net losers, St. Luke's benefited nearly two hours per year per employee.

At this stage and on this record, we would be hard-pressed to say that the rounding policy has "average[d] out" over the long run such that it did not result in undercompensation. *See* 29 C.F.R. § 785.48(b). St. Luke's could have rebutted this reasonable inference by, for example, pointing to different probative lookback periods in which employees were overcompensated or neutrally compensated. *See Aguiliar*, 948 F.3d at 1289. But it has not.

Instead, St. Luke's argues about policy. It asserts that finding for the employees would upend decades of labor law and nullify the rounding regulation altogether. It insists that no employer would ever implement a rounding policy if it were required to perpetually audit that policy across various lookback periods. In other words, St. Luke's argues that the employees' theory renders the rounding regulation mere surplusage or else makes it too burdensome to be worthwhile.

These arguments miss their mark. The rounding regulation does not require rounding; it permits it. That permission comes with conditions: chiefly, that the rounding "will not result" in systematic or routine underpayment "over a period of time" for work performed. 29 C.F.R. § 785.48(b); *see Aguilar*, 948 F.3d at 1289. Here, with automated, electronic timing and accounting, this is easy to verify because the system records the exact time that an employee clocks in or out. There is no administrative hassle. This is not like the old days of punch cards and hand arithmetic.

Moreover, given this case's unusual posture, we think St. Luke's' fears about upending labor law are unfounded. By stipulation, St. Luke's acknowledges that all clocked time was worked time. And yet it implies otherwise, appealing to "the practical realities of time clock placement" in a large facility like its own. Practically speaking, employees might clock in and walk down the hall for a cup of coffee before actually starting work. Or they might, at the end of the shift, pack up their belongings and say goodbye to coworkers before clocking out. Maybe some of that occurred here. And maybe after we vacate the summary-judgment order, the parties will have to expend significant effort litigating whether all clocked hours were actually hours worked. But that is not our concern. We hold St. Luke's to its stipulation, *see 303 Creative LLC v. Elenis*, 600 U.S. ---, 143 S. Ct. 2298, 2316-17 (2023), which formed the basis for its summary-judgment position that the rounding policy itself was lawful, neutral, and sufficient to defeat the employees' claims.[2] We conclude that the employees have raised a genuine dispute that the rounding policy, as applied, did not average out over time. The district court therefore erred in granting summary judgment on the FLSA and Missouri wage claims.[3]

## B.

The rest of the district court's summary-judgment order followed from its conclusion that the employees could not prevail on their rounding-policy theory. For the unjust-enrichment and breach-of-contract claims, the court reasoned that if the

---

[2]We cannot help but find this posture odd. By stipulating away the significant question of whether all rounded-off time was indeed compensable time, the parties have plucked the rounding regulation from the broader regulatory scheme and subjected it to artificial examination unmoored from practical realities.

[3]For these claims, the district court did not address whether any undercompensation from rounding was *de minimis* according to 29 C.F.R. § 785.47. We decline to do so in the first instance. *See Fergin v. Westrock Co.*, 955 F.3d 725, 730 n.3 (8th Cir. 2020) (declining to consider issues that were briefed to the district court but "not passed on").

rounding policy was lawfully applied then any enrichment was not unjust and no contract was breached. *See Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 536 (Mo. Ct. App. 2011) ("Demonstrating unjust retention of the benefit is the most significant element of unjust enrichment . . . ."). But a genuine dispute remains that the rounding policy was *not* lawfully applied. Finally, although the district court undertook a partial FLSA *de minimis* analysis for the unjust-enrichment claim, it never actually resolved that issue (nor the threshold issue of whether the Missouri common-law doctrine incorporates the FLSA's *de minimis* standard). We therefore decline to resolve these issues at this juncture, and we vacate the judgment as to all claims and remand for consideration in light of this opinion.

## III.

For the foregoing reasons, we vacate the district court's grant of summary judgment to St. Luke's and remand for further proceedings consistent with this opinion.

_____