# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1388
_____

Patricia Conway

*Plaintiff - Appellant*

v.

Mercy Hospital St. Louis

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 16, 2025
Filed: August 1, 2025

_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

ERICKSON, Circuit Judge.

During the COVID-19 pandemic, Patricia Conway, a registered nurse, was terminated from Mercy Hospital St. Louis ("Mercy Hospital")—a non-profit healthcare facility owned and operated by Mercy Health Ministries—after she refused to comply with the hospital's vaccination policy. The policy required all employees to receive the COVID-19 vaccine unless they obtained an approved medical or religious exemption. Conway requested a religious exemption, which

Mercy Hospital denied. After Conway was terminated for noncompliance with the policy, she commenced this action alleging religious discrimination under Title VII of the Civil Rights Act of 1964. Mercy Hospital moved for summary judgment asserting, as a religious organization, it was exempt under 42 U.S.C. § 2000e-1(a). The district court[1] granted summary judgment. We affirm.

## I.    BACKGROUND

Mercy Hospital St. Louis is a wholly owned subsidiary of Mercy Health East Communities, which in turn is wholly owned by Mercy Health. Mercy Health is the civil business entity formed by Mercy Health Ministries—a public juridic person of the Roman Catholic Church—to provide healthcare services in accordance with Catholic doctrine. Mercy Health's wholly owned subsidiary, MHM Support Services, Inc. ("MHM"), is a Missouri nonprofit corporation that employs most Mercy Health personnel, excluding physicians and certain other licensed professionals. To summarize:



---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

MHM's bylaws describe its mission as "witness[ing] . . . Christ's concern for the care of the sick and injured and the teaching of the Roman Catholic Church regarding Christian health services and charity." Conway was employed as a registered nurse by MHM from January 2006 to July 2015 and again beginning in July 2017.

In July 2021, Mercy Hospital implemented a mandatory COVID-19 vaccination policy in accordance with the Centers for Medicare and Medicaid Services ("CMS") vaccination requirement. Under the policy, unvaccinated employees were permitted to work through September 30, 2021. After that date, they were placed on unpaid suspension. If an employee remained unvaccinated for twenty-eight days and did not obtain an exemption, the employee was subject to termination.

On July 29, 2021, Conway submitted a request for a religious exemption. She objected to the vaccine on the grounds that it contained fetal tissue cells and was "possibly harmful to the human body," asserting her faith required her not to "participate in pharmacopeia." She included a letter of support from Pastor David W. Hall of True Hope Ministry. Mercy Hospital denied her request for a religious exemption on August 2, 2021.

Conway did not engage in further discussions with management until September 24, 2021, when her supervisor inquired about her vaccination status. Upon confirming that she would not comply with the policy, Conway was informed she could continue working until her last scheduled shift on September 30, 2021. Her last day of work was October 1, 2021, and Conway was formally terminated on October 28, 2021.

In early 2022, Conway filed a complaint with the Equal Employment Opportunity Commission, which was cross-filed with the Missouri Commission on Human Rights ("MCHR"). The MCHR administratively closed the case, concluding that Mercy Health qualified as a religious organization not subject to the Missouri

Human Rights Act.  Conway then filed suit in Missouri state court, asserting a claim of religious discrimination under Title VII of the Civil Rights Act of 1964.  Mercy Hospital removed the action to federal court and moved for summary judgment based on Title VII's exemption for religious organizations.  It submitted a statement of uncontroverted facts, which Conway admitted.   The district court granted summary judgment in Mercy Hospital's favor.  This appeal followed.

## II.    DISCUSSION

We review the district court's grant of summary judgment *de novo*.  Meek v. Kan. City Life Ins. Co., 126 F.4th 577, 585 (8th Cir. 2025).  Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Houston v. Saint Luke's Health Sys., Inc., 76 F.4th 1145, 1149 (8th Cir. 2023).

Title VII generally prohibits employers from discriminating against employees on the basis of their religious beliefs.  However, Congress created a limited exemption for "religious organizations."  See Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327, 329 (1987) (discussing 42 U.S.C. § 2000e-1(a)).  The exemption provides:

> [Title VII] shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

Because Congress did not define what makes an organization "religious," we look to the ordinary meaning of the term.  Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 566 (2012).  Beginning with the statutory text, we first consider whether the term "religious" is unambiguous when read in context.  United States v. Goad, 788 F.3d 873, 875 (8th Cir. 2015).

-4-

The ordinary meaning of "religious" is broad. A religious organization is commonly understood to be one "committed, dedicated, or consecrated to service of the divine" or "relating to religion." *Religious*, Webster's Third New International Dictionary (3d. ed.1968); see also *Corporation*, Black's Law Dictionary (4th rev. ed. 1968) (defining "religious corporation" as "[a] corporation formed for the purpose of maintaining or propagating religion . . . and incidentally owning and administering real and personal property for religious uses."). These definitions guide our analysis, as do the uncontroverted material facts regarding Mercy Hospital's structure and mission:

- Mercy Hospital St. Louis is a nonprofit, tax-exempt healthcare provider that receives monetary support from the Catholic Church.

- It operates as a d/b/a of Mercy Hospitals East Communities, a wholly owned subsidiary of Mercy Health East Communities, which is itself owned by Mercy Health, a civil nonprofit corporation.

- Mercy Hospital's mission is: "As the Sisters of Mercy before us, we bring to life the healing ministry of Jesus through our compassionate care and exceptional service."

- The hospital's environment reflects its religious identity, with Catholic imagery throughout and daily prayers broadcast over the public address system.

- Mercy Health is the civil corporate entity through which the Catholic Church conducts its healthcare ministry, and its governing documents commit it to advancing the healing ministry of Jesus Christ in accordance with Catholic doctrine.

- Mercy Health's Board of Directors includes four Sisters of Mercy and is accountable to the Vatican Dicastery for the Institutes of Consecrated Life and Societies of Apostolic Life.

- Mercy Health applies the Ethical and Religious Directives for Catholic Health Care Services promulgated by the United States Conference of Catholic Bishops and requires employees to adhere to them.

- Mercy Health is wholly owned by Mercy Health Ministries, a public juridic person of the Roman Catholic Church formed under Canon Law and not incorporated under civil law.

- Mercy Health Ministries, Mercy Health, and Mercy Hospital St. Louis are all listed in the Official Catholic Directory, which confers IRS recognition of their religious and tax-exempt status and authorizes them to hold property in the name of the Church.

- The MCHR has recognized Mercy and its affiliates as religious organizations operated by the Catholic Church.

These undisputed facts overwhelmingly support the conclusion that Mercy Hospital qualifies as a "religious organization" within the meaning of § 2000e-1(a). See *Corporation*, Black's Law Dictionary (4th rev. ed. 1968).

That Mercy Hospital generates revenue or employs a predominantly non-Catholic workforce does not alter this determination. We may not assess whether an organization is "religious" based on the nature of its religious expression. See Bogen v. Doty, 598 F.2d 1110, 1113 (8th Cir. 1979) ("[R]ecognition of religion is tolerated, but excessive entanglement between government and religion is impermissible."). To deny an exemption based on inherently religious decisions—such as whether to proselytize or employ only co-religionists—would risk unconstitutional denominational discrimination. See Catholic Charities Bureau, Inc.

v. Wisconsin Lab. & Indus. Rev. Comm'n, 145 S. Ct. 1583, 1591–92 (2025). We may not refuse to apply § 2000e-1(a)'s exemption based on the hospital's choice to employ non-Catholics or provide services to the broader public. See id. at 1592. Nor may we construe § 2000e-1(a) in a manner that raises serious constitutional concerns when a straightforward reading avoids them. See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988). The statutory text plainly sets out the exemption, and Mercy Hospital falls within its ambit.

Having concluded Mercy Hospital qualifies as a religious organization under § 2000e-1(a), we next consider Conway's argument that its conduct nonetheless renders the exemption inapplicable. Conway advances two theories: waiver and equitable estoppel.

Conway first contends Mercy waived its right to claim the Title VII exemption by complying with the CMS mandate, which required covered providers to offer a religious exemption process. But compliance with a federal regulation does not waive a statutory exemption that Congress conferred. See Hall v. Baptist Mem'l Health Care Corp., 215 F.3d 618, 625 (6th Cir. 2000) (observing that parties cannot typically waive exemptions from Title VII claims); see also Little v. Wuerl, 929 F.2d 944, 951 (3d Cir. 1991) (rejecting waiver argument and explaining that Title VII's religious exemption is not "a privilege or interest granted to [religious] organizations"). Moreover, while the CMS rule required employers to provide a process for requesting exemptions, it did not abrogate Title VII or suspend § 2000e-1(a)'s application to religious organizations. See Biden v. Missouri, 595 U.S. 87 (2022) (upholding CMS mandate without limiting Title VII protections). There is no indication in the rule—or in the record—that a religious employer forfeits its exemption by following a federal requirement to evaluate accommodation requests.

Conway next argues Mercy should be estopped from invoking the exemption at summary judgment because its internal vaccine policy invited employees to submit religious exemption requests. But equitable estoppel requires more than a

general invitation; it requires (1) a clear representation, (2) reasonable reliance, and (3) resulting detriment. <u>Farley v. Benefit Tr. Life Ins. Co.</u>, 979 F.2d 653, 659 (8th Cir. 1992). Mercy Hospital's policy stated only that "[e]xemptions to the mandatory COVID-19 vaccination may be granted for certain medical contraindications . . . [or] if vaccination conflicts with the tenets of a sincerely held religious belief." The conditional language does not guarantee approval. Nor does it suggest Mercy was abandoning its exemption from Title VII's liability framework. <u>See</u> 86 Fed. Reg. 61555-01, 61568–69 (employers implementing the vaccine mandate are still bound by Title VII). Because Mercy made no promise that would have induced detrimental reliance, Conway's estoppel argument fails.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____