NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0074n.06

No. 19-3666

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Feb 04, 2021
DEBORAH S. HUNT, Clerk

WILLIE S. HERRING,

    Petitioner-Appellant,

v.

ALAN J. LAZAROFF, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
NORTHERN DISTRICT OF
OHIO

BEFORE:    COLE, Chief Judge; SILER and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.    Willie Herring seeks a writ of habeas corpus on two grounds. First, he alleges that the jury instructions misstated the intent element of complicity to commit aggravated murder, which violated his right to due process. Second, he argues that his counsel was ineffective for failing to object to the jury instructions on "purpose" and "causation." The Ohio Supreme Court considered both of these claims on direct appeal and concluded that neither warranted vacating Herring's convictions. Because the Ohio Supreme Court denied these claims, we may not grant Herring's petition unless he can show that the Ohio Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law. Herring cannot meet this exacting standard. Therefore, we affirm the district court's denial of his petition.

I.

Herring and four co-defendants went to a bar in Youngstown, Ohio to commit a robbery. *State v. Herring (Herring I)*, 762 N.E.2d 940, 945 (Ohio 2002).[1] As they entered the bar, one of the robbers shot a patron, Jimmie Lee Jones. *Id.* at 946. Nobody saw which robber pulled the trigger. *Id.* Once inside, one of Herring's co-defendants shot Herman Naze and an unidentified robber shot Dennis Kotheimer. *Id.* The bar owner and another patron were also shot during the robbery. *Id.* When police arrived on scene, the victims were taken to a nearby hospital where Jones, Naze, and Kotheimer were pronounced dead. *Id.* at 946–47.

The State indicted Herring on three counts of aggravated murder, two counts of attempted aggravated murder, and three counts of aggravated robbery. *Id.* at 947. For purposes of this appeal, only the three counts of aggravated murder (Counts One, Two, & Three) are relevant. Herring proceeded to trial on all charges. *Id.*

At the conclusion of the trial, the judge instructed the jury on each count of aggravated murder. *Id.* On Count One, for the killing of Jones, the judge informed the jury that it could find Herring guilty either as the principal offender or for complicity to commit aggravated murder. *Id.* To find Herring guilty as the principal, the jury needed to find that Herring "purposely caused the death of [Jones]" and specifically intended to cause Jones's death. DE 7-21, Trial Tr., PageID 6659–60. On the "purpose" element, the jury was instructed that "[t]he purpose with which a

_____

[1] Under AEDPA, the Ohio Supreme Court's recitation of the facts is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). In his reply brief, Herring argues that he has rebutted this presumption by clear and convincing evidence. Despite making this objection, Herring provides no developed argument as to why the Ohio Supreme Court's articulation of the facts is wrong. Herring did make two specific objections to particular facts in the district court (one relating to how many times one of the victims was shot and one relating to how witnesses described the robber who shot them). As the district court noted, however, Herring has not provided clear and convincing evidence that the Ohio Supreme Court's recitation of those facts was wrong. For that reason, we adopt the Ohio Supreme Court's version of events.

person does an act is determined from the manner in which it is done, the means used and all the other facts and circumstances in evidence." *Id.* at 6660–61. The judge then defined cause as:

> [A]n act which in a natural and continuous sequence directly produces the death, and without which it would not have occurred. The defendant's responsibility is not limited to the immediate or most obvious result of his acts. The defendant is also responsible for the natural and foreseeable results that follow, in the ordinary course of events, from the acts.

*Id.* at 6661.

After issuing the principal offender instruction, the judge instructed the jury that it could find Herring guilty of complicity if it found "beyond a reasonable doubt, that . . . the defendant purposely aided or abetted another in committing the offense of aggravated murder." *Id.* at 6662. That meant that the jury had to find that "[Herring] purposely aided or abetted another in causing the death of [Jones]." *Id.* at 6663. As to the intent required, the judge told the jury that it had to "find beyond a reasonable doubt that [Herring] specifically intended to aid and abet another in causing the death of [Jones]." *Id.* After concluding the instructions on intent, the judge incorporated the instructions on purpose and cause that she issued during the charge on the principal offender theory.

On Counts Two and Three, the jury was instructed to consider whether Herring was guilty of aggravated murder solely on a complicity theory. The jury instructions on these Counts were functionally identical to the instructions issued on the Count One complicity theory.

After the jury received the instructions, it retired to deliberate. The jury deliberations took three days, and, during that time, the jury asked numerous questions. For example, the jury asked whether "there [was] any reason why we have to tolerate screaming and pounding on the table without our opinion being heard." *Id.* at 6733. They also asked to see particular pieces of evidence and whether they could sign the verdict forms out of order. At the end of the deliberations, the

jury found Herring guilty on all three counts of aggravated murder under the complicity theory but found him not guilty as the principal on Count One. *Herring I*, 762 N.E.2d at 947.

Herring appealed his convictions to the Ohio Supreme Court. In front of that Court he argued, among other things, (1) that the jury instructions on the intent element of complicity were ambiguous and deprived him of his right to due process, and (2) that his counsel was constitutionally ineffective for failing to object to the instructions on "purpose" and "cause" in the jury instructions. *Herring I*, 762 N.E.2d at 947, 957. The Ohio Supreme Court rejected his first argument because it concluded that there was "'no reasonable likelihood that the jury . . . applied the challenged instruction' incorrectly." *Id.* at 948 (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). It then rejected his second argument because it concluded that counsel had not been ineffective in failing to object to the purpose instruction and Herring was not prejudiced by counsel's failure to object to the cause instruction. *Id.* at 957.

Herring filed a petition for a writ of habeas corpus in the district court alleging these two grounds for relief as well as various other constitutional violations. The district court denied Herring's petition because it concluded that the Ohio Supreme Court's decision was not contrary to nor an unreasonable application of clearly established federal law. Herring appealed.

## II.

Herring asserts two grounds for relief on appeal. First, he says that the jury instructions regarding the specific intent element of complicity to commit aggravated murder were ambiguous and deprived him of his right to due process. Second, he claims that his trial counsel's failure to object to the instructions on "purpose" and "cause" violated his right to effective counsel under the Sixth Amendment. The Ohio Supreme Court's decision to reject these claims was not contrary

to nor an unreasonable application of clearly established federal law, so we affirm the district court's denial of Herring's petition.

A.

Both Herring and the Warden agree that this case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under the portion of AEDPA relevant to this case, a federal court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established federal law if the state court "applies a rule that contradicts the governing law" or "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the Supreme Court's precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state court's decision is an "unreasonable application" of federal law if "there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

B.

Herring's first ground for relief is that the trial court's jury instructions on the intent element of the crime of complicity to commit aggravated murder violated his right to due process. A jury instruction that relieves the State of its burden to prove every element of the offense beyond a reasonable doubt violates the Due Process Clause. *See Francis v. Franklin*, 471 U.S. 307, 313 (1985) (citing *In re Winship*, 397 U.S. 358, 363 (1970)). In some cases, it will be easy to tell whether an instruction relieves the State of its burden of proof, such as when the instruction creates

a mandatory presumption, *see, e.g.*, *Franklin*, 471 U.S. at 325, or when an element of the crime is decided by the judge instead of the jury, *see, e.g.*, *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995). But in other cases—such as when the jury instruction is ambiguous—the inquiry is more difficult. *See Boyde*, 494 U.S. at 380. In those cases, the Supreme Court has instructed us to ask "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that relieves the State of its burden of proof on every element. *Id.*; *see also Estelle v. McGuire*, 502 U.S. 62, 72–73 (1991) (clarifying that the *Boyde* inquiry is based in the Due Process Clause of the Fourteenth Amendment). A "reasonable likelihood" is something more than the "mere possibility" of improper application, but less than a preponderance of the evidence. *Boyde*, 494 U.S. at 380. When conducting this inquiry, we must be mindful not to judge the ambiguous jury instruction "in artificial isolation." *Id.* at 378 (citing *Boyd v. United States*, 271 U.S. 104, 107 (1926)). Instead, we must view its likely effect on the jury "in the context of the overall charge." *Id.*

As given at Herring's trial, the jury instructions on complicity to commit aggravated murder required the jury to find beyond a reasonable doubt that Herring "purposely aided or abetted another in committing the offense of aggravated murder." DE 7-21, Trial Tr., PageID 6662, 6672, 6678. As to the intent necessary to support a conviction, the jury was instructed that Herring had to "specifically intended to aid and abet another in causing the death of [the victim]." *Id.* at 6663, 6673, 6679. The jury was never instructed that Herring had to specifically intend to cause death.

Herring claims that these instructions violated his right to due process because they are ambiguous and it is reasonably likely that the jury convicted him without finding that he specifically intended to cause death, which is an essential element of the crime of complicity to

commit aggravated murder. *See Herring I*, 762 N.E.2d at 947 ("[T]o support a conviction for complicity by aiding and abetting . . . the evidence must show * * * that the defendant shared in the criminal intent of the principal." (third alteration in original) (internal quotations omitted)); *see also State v. Johnson*, 754 N.E.2d 796, 801 (Ohio 2001); *State v. Schaeffer*, 41 N.E.3d 813, 827 (Ohio Ct. App. 2015) (citing *Herring* for the proposition that the state must prove the defendant had the intent "to purposely cause the death of" the victim). When confronted with this claim on direct review, the Ohio Supreme Court held that Herring was not entitled to relief because there was not a "reasonable likelihood" that the jury convicted him without finding that he possessed the specific intent to cause death. *Herring I*, 762 N.E.2d at 948 (quoting *Boyde*, 494 U.S. at 380). The Court reasoned:

> Herring's claim assumes that the jury could have found that he "specifically intended to aid and abet another in causing the death" of another without finding that he specifically intended to cause the death of another. We disagree. It is hard to see how a person could, in the words of the instruction, *intend* to "help, assist, or strengthen" or "encourage, counsel, incite, or assist" another person in causing death, without also intending that the victim die. It is equally hard to see any reasonable likelihood that the jury would understand the instruction as allowing the conviction of a defendant who did *not* intend that the victim die. Thus, the instructions the trial court gave are functionally equivalent to an instruction requiring specific intent to cause death.

*Id.*

This decision was not contrary to clearly established federal law. The Ohio Supreme Court identified the relevant Supreme Court case—*Boyde*—and correctly stated the relevant rule—an ambiguous jury instruction violates due process if there is a "'reasonable likelihood that the jury . . . applied the challenged instruction' incorrectly." *Id.* at 948 (quoting *Boyde*, 494 U.S. at 380). The court then applied that rule by examining whether it was reasonably likely that the jury applied the instruction in a way that relieved the State of its burden of proof on an essential element of the crime, which is exactly what *Boyde* instructs courts to do in these situations. *Id.* Given that

this reasoning did not "contradict the governing law" and the Supreme Court has never confronted a set of facts that are "materially indistinguishable" from the facts of Herring's case, Herring cannot show that the Ohio Supreme Court's decision was contrary to clearly established law. *See Williams*, 529 U.S. at 405–06.

Herring's argument that *Patterson v. Haskins* requires a different result lacks merit. *See* 316 F.3d 596 (6th Cir. 2003). In *Patterson*, the defendant was convicted of involuntary manslaughter by child endangering. *Id.* at 602. While informing the jury of the elements of that offense, the trial court omitted the instruction requiring the jury to find that child endangerment was the "proximate cause" of the decedent's death. *Id.* at 607. The Ohio Court of Appeals found that the defendant was not entitled to relief because the trial court had instructed the jury that involuntary manslaughter based on other predicate acts required the State to prove proximate cause. *Id.* at 605. According to the Ohio Court of Appeals, the correct instructions on the other charges meant that the instructions, as a whole, were "sufficiently detailed." *Id.* On federal post-conviction appeal, this court found that the Ohio Court of Appeals' decision was "contrary to" the Supreme Court case *United States v. Gaudin* because the state court did not determine whether the defendant's "right to have a jury determine, beyond a reasonable doubt, his guilt of *every element* of the crime with which he is charged" was protected. *Id.* at 609 (citing *Gaudin*, 515 U.S. at 509–10).

Herring compares the Ohio Supreme Court's decision to call the given instruction in his case the "functional equivalent" of a correct instruction to the Ohio Court of Appeals use of the phrase "sufficiently detailed" in *Patterson*. However, the state court in *Patterson* used the phrase "sufficiently detailed" to create its own *ad hoc* test that did not inquire into whether the jury may have convicted the defendant without proof of every element of the offense. *Patterson*, 316 F.3d

at 605. In contrast, the Ohio Supreme Court used the phrase "functional equivalent" while applying the "reasonable likelihood" test announced in *Boyde*. *Herring I*, 762 N.E.2d at 948. *Patterson*, therefore, does not demonstrate that the Ohio Supreme Court's decision was contrary to clearly established federal law.

Nor was the Ohio Supreme Court's decision an unreasonable application of clearly established law. Herring also bases his argument on this prong of the AEDPA analysis on the Ohio Supreme Court's decision to call the given instruction the "functional equivalent" of the proper instruction. Herring objects to that characterization of the given instruction because he contends that it is possible that the jury found that he specifically intended to aid and abet another without finding that he had the specific intent to kill. For example, he argues "picking up the guns before-hand, naming the place to rob, or merely entering the bar (along with the principal) to commit the aggravated robbery could all form the basis for proving a specific intent to aid and abet" without creating an intent to kill. DE 17, Obj. to R. & R., 7428–29. But as the district court noted, the trial judge did not merely instruct the jury that Herring needed to have specifically intended to aid and abet; she instructed the jury that "Herring needed to have 'specifically intended to aid and abet another *in causing the death of*' each victim." DE 22, Order, PageID 7488. When this instruction is read as a whole, it is hard to see how a jury could have found Herring guilty without finding that he specifically intended to cause death.

With that being said, it is possible to read the given instruction disjunctively and conclude that the specific intent requirement applies only to the words "aid and abet another" and not the words "in causing the death of."[2] Under this reading of the instruction, acts such as picking up and distributing the guns before-hand would demonstrate intent to aid or abet another and be

---

[2] The Warden seemingly concedes that this interpretation is a possibility. *See* CA6 R.21, Appellee Br., 29.

sufficient to support a conviction. For that reason, if this case were on direct appeal, the question of whether there was a "reasonable probability" that the jury misapplied the instruction by reading it disjunctively might arguably be a close one. After all, similar matters of interpretation have had to make their way to the Supreme Court for resolution. *See, e.g.*, *Flores-Figueroa v. United States*, 556 U.S. 646, 647 (2009) (interpreting what elements "knowingly" modified in the phrase "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person"); *Liparota v. United States*, 471 U.S. 419, 420 (1985) (interpreting what elements "knowingly" modified in the phrase "knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations" (alteration in original)). But this case is not on direct review, and a "fair-minded jurist" could agree with the Ohio Supreme Court's implicit conclusion that there was at most a mere possibility that the jury could have understood the instruction disjunctively. *Richter*, 562 U.S. at 102; *see also Boyde*, 494 U.S. at 380–81 ("Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might."); *accord Flores-Figueroa*, 556 U.S. at 650 ("In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as [purposely]) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence."). Therefore, although Herring's argument that a jury could have applied this language improperly could be well-taken, we are bound to defer to the state court's decision.

Herring also argues that, even if the words of the instruction standing alone do not demonstrate that there was a "reasonable likelihood" that the jury misapplied the instruction, the instruction combined with three other parts of the record would lead all fair-minded jurists to that conclusion. *See Estelle*, 502 U.S. at 72 ("It is well established that the instruction 'may not be

-10-

judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973))). First, he points to two of the trial judge's statements indicating that she did not believe complicity to commit aggravated murder required specific intent to kill. But neither of these statements were made in front of the jury, so they do not change the likelihood that the jury misapplied the instruction. Second, Herring argues that the jury's long deliberations and multiple questions demonstrate that there is a reasonable likelihood that the jury did not understand what it was required to find on the intent element. However, the jury's questions were mainly about whether they could see unadmitted evidence or how to conduct deliberations, not the elements of complicity. Third, Herring argues that the fact that the jury acquitted him of aggravated murder—a crime that the judge instructed the jury required proof of specific intent to cause death—demonstrates that the jury did not believe that he had the specific intent to cause death. But as the district court noted, a lack of specific intent to cause death was not the only reason that the jury may have acquitted Herring of aggravated murder as the principal; the jury may have acquitted him because "[n]obody saw who shot" the victim in Count One. *Herring I*, 762 N.E.2d at 946. For these reasons, the other parts of the record to which Herring turns do not demonstrate that the Ohio Supreme Court's decision was an unreasonable application of clearly established law.

In sum, the Ohio Supreme Court's decision that there was not a reasonable likelihood that the jury applied the instruction improperly was not contrary to nor an unreasonable application of clearly established federal law.

## C.

Herring's second ground for relief is that his trial counsel's failure to object to jury instructions on "purpose" and "cause" constituted ineffective assistance of counsel. Counsel is

ineffective if "counsel's representation [falls] below an objective standard of reasonableness . . . under prevailing professional norms" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The Ohio Supreme Court concluded that Herring's counsel was not ineffective for failing to object to the purpose instruction because the objections were unsupported by law. *Herring I*, 762 N.E.2d at 957. It also concluded that counsel was not ineffective for failing to object to the cause instruction because Herring could not demonstrate that he was prejudiced by counsel's failure to object. *Id.* These decisions were not unreasonable applications of clearly established law.[3]

Herring first argues that his trial counsel was ineffective for failing to object to the jury instruction defining "purpose." The trial court instructed the jury that "[t]he purpose with which a person does an act is determined from the manner in which it is done, the means used and all the other facts and circumstances in evidence." DE 7-21, Trial Tr., PageID 6660–61. Herring objects to this instruction because he believes that the court's use of the word "is" created an unconstitutional conclusive presumption, and he argues that his counsel was ineffective for failing to object on those grounds. *See Sandstrom v. Montana*, 442 U.S. 510 (1979) (holding that a conclusive presumption that relieves the State of its burden of proof on an element of an offense is unconstitutional). The Ohio Supreme Court rejected this argument because it had already concluded in a prior case that this instruction did not create a conclusive presumption. *Herring I*, 762 N.E.2d at 957 (citing *State v. Phillips*, 656 N.E.2d 643, 668 (Ohio 1995)).

The Ohio Supreme Court's decision to deny this claim was not an unreasonable application of *Strickland* because Herring cannot show that his counsel acted ineffectively in failing to object

---

[3] Herring only argues that the State Court's decision on this claim was "an unreasonable application" of clearly established law, not that it was "contrary to" clearly established law.

to the instruction. Although Herring does not dispute that there is binding precedent in Ohio foreclosing a *Sandstrom* objection to this instruction, *see Phillips*, 656 N.E.2d at 668, he argues that his counsel still had an obligation to object because federal review of the claim could prove different than state review. But federal review was unlikely to prove different than state review because the Sixth Circuit had already held that a functionally identical purpose instruction was constitutional under *Sandstrom*. *Roberts v. Marshall*, 736 F.2d 1126, 1127–28 (6th Cir. 1984) (approving an Ohio instruction that read: "The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means used and all the other facts and circumstances in evidence"). Given that both the Ohio Supreme Court and the Sixth Circuit had already held that the given purpose instruction was constitutional at the time of Herring's trial, the Ohio Supreme Court's decision that counsel did not provide deficient representation by failing to object was not an unreasonable application of clearly established law.

Herring's second argument is that his counsel was ineffective for failing to object to the definition of "cause" provided by the trial judge. The judge instructed the jury that Herring's "responsibility is not limited to the immediate or most obvious result of his acts. [Herring] is also responsible for the natural and foreseeable results that follow, in the ordinary course of events, from the acts." DE 7-21, Trial Tr., PageID 6661. Herring argues that these "instructions directly undermined the required *mens rea* because they instructed the jury that Herring did not even have to foresee injury to any specific person or any injury in its precise form." CA6 R.16-1, Appellant Br., 45. The Ohio Supreme Court rejected this argument because "Herring was not prejudiced by his counsel's failure to object, since the instructions as a whole required the jury to find purpose to kill in order to convict." *Herring I*, 762 N.E.2d at 957.

Herring cannot show that this decision was an unreasonable application of clearly established law because, as discussed above, we must defer to the Ohio Supreme Court's holding that there is no "reasonable probability" that the jury could have convicted Herring without finding that he had the specific intent to cause death. *See supra* Part II.B.; *see also Boyde*, 494 U.S. at 380. And if there is no reasonable likelihood that the jury convicted Herring without finding the requisite intent to kill, he cannot have been prejudiced by his counsel's failure to object.

For these reasons, the Ohio Supreme Court's decision that Herring's counsel was not constitutionally ineffective was not an unreasonable application of clearly established law.

III.

We affirm the district court's decision denying Herring's petition because Herring has not demonstrated that the Ohio Supreme Court's decision was contrary to or an unreasonable application of clearly established law.